harmony with the uniform practice of the corporation until the present year, is not in conflict with any express franchise originally conferred. It follows that a new trial must be refused and that judgment must be entered in favor of the relators on the special verdict.

*Error assigned* was in entering judgment for relators.

*Joseph P. McCullen,* with him *James E. Dwyer* and *John A. Ward,* for appellants.—The charters of private corporations created prior to the adoption of the present constitution were left exactly as the new constitution found them, and so must remain until the corporation shall accept the provisions of the present constitution: Hays et al. v. Com. ex rel. McCutcheon, 82 Pa. 518; Williamsport Pass. Ry. Co.'s Appeal, 120 Pa. 1.

*J. Washington Logue,* with him *Edward B. Seiberlich,* for appellee, cited: Duncan v. Penna. R. R. Co., 111 Pa. 352; McAboy's App., 107 Pa. 548; P. & R. R. R. Co. v. Patent, 17 W. N. C. 198; Monongahela Navigation Co. v. Coon, 6 Pa. 379; Com. v. Cullen, 13 Pa. 132; Baker v. Pepper, 14 W. N. C. 560; Baker's App., 109 Pa. 461; Mutual Fire Ins. Co. v. Stokes, 9 Phila. 80; Com. v. Central Pass. Ry. Co., 52 Pa. 506; Com. v. Yetter, 190 Pa. 488.

PER CURIAM, May 19, 1902:

The decree in this case is affirmed on the opinion of Judge WILLSON.

---

# Jackson's Estate.

*Decedent's estates—Sale of interest in estate—Inadequacy of price.*

Where a person who owns a vested interest in an estate, which may not come into possession for years, sells the same for a price equal to about one fourth of the principal, he cannot have the sale set aside after the death of the life tenant which occurred a few months thereafter, where there is no evidence that any fraud, oppression or deceit was practiced upon him.

Argued March 26, 1902. Appeal, No. 20, Jan. T., 1902, by Frank H. Jackson, from decree of O. P. Phila. Co., Oct. T.,

1891, No. 437, dismissing exceptions to adjudication in Estate of Francis H. Jackson, Deceased. Before McCollum, C. J., Dean, Fell, Brown, and Mestrezat, JJ. Affirmed.

Exceptions to adjudication.

Penrose, J., filed the adjudication which was in part as follows :

The decedent died on March 10, 1891. By his will, proved March 10, 1891, after gifts of specific articles as there set forth, he gave the residue of his estate to his executor in trust to pay the net income to his wife, Mary H. Jackson, for life ; and at her death, after provision for the maintenance of his son, William H. Jackson, for life, if he should survive his said mother, $2,000 to his son, Francis H. Jackson, $2,000 to his son, Horace Jackson, and the residue to his children, Jannette Newton, Richard Jackson, Isabella H. Ford, and Arthur T. Jackson, in equal shares. It being provided that, in case of the death of any child or children before the distribution, the child or children of any deceased child should take the share of such deceased child, etc.

William H. Jackson, as represented to the court, died in the lifetime of his mother, without issue.

Mrs. Mary H. Jackson, as further represented, died September 25, 1901.

The legacy of Horace Jackson was assigned to Frank W. Pierson, by instrument under seal, dated March 28, 1899, for $300, the assignment, including also the interest of the assignor in the estate of his grandfather, William S. Lower, shown by the adjudication of the account of the trustee under the grandfather's will, of even date with the present adjudication, to be $778.05. Whether this was intended as an absolute assignment or simply as collateral to a loan, did not appear; but as no objection was made on behalf of Horace Jackson, and as the petition for distribution refers to a prior assignment to Roberts C. Banes, payment is awarded to the second assignee, subject to such sum, if any, as may be due under the prior assignment, and subject to such equity as the assignor may have under such second assignment.

A similar assignment was executed by Francis H. Jackson to

Henry S. Hallman, October 27, 1900, in consideration of the payment of $600. This assignment, like that of Horace Jackson, recites at length the will of Francis H. Jackson, Sr., the present testator, and also the will of William S. Lower; and after stating that "the said Francis H. Jackson is now in need of money and has considered that it would be advisable to sell his interest in the said two estates rather than wait until the death of Mary H. Jackson, who is entitled to life rights in the said respective fund, assigns, in terms, all rights of the assignor in the estate of "the said Francis H. Jackson, deceased, and the estate of the said William S. Lower."

It was conceded by Mr. Harrington, on behalf of Francis H. Jackson, that the assignment was intended to pass, and that it did pass, the interest in the estate of William S. Lower; but it was contended that the insertion in the instrument of the interest under the will of Francis H. Jackson, Sr., was fraudulent, and that the assignor did not understand that he was assigning it. The evidence, however, fails to sustain this assertion. The assignor resides in New York, and received the paper several days before its execution. He had ample time to examine it, and its terms are too clear to permit of misunderstanding. He is a young man of at least ordinary intelligence; and while, as the instrument itself shows, he was, unquestionably, "in need of money," and while the consideration was wholly disproportioned to the value of what he was parting with, he was dealing with his own, and was at liberty to sell at whatever price he was silly enough to accept for it. Courts cannot protect parties from the consequences of their own folly, where no fraud is shown to have been practiced upon them.

That the assignor was fully aware that he had sold his interests in both estates is shown affirmatively and conclusively by his letter of November 8, 1900, to Albert James, through whose agency the sale was made, in which he says: " As I figure it, you still owe me some money as follows, viz: Net amount due me for my interest in the two estates," etc.

It is true that the assignor appears to have received only $477.75 of the consideration mentioned in the deed—$22.25 having been retained by Mr. James to pay for expenses of various visits to New York, and $100 having been withheld by the assignee with the assent of the assignor—apparently to pay for

James's services; but this was simply another act of foolishness on the part of the assignor, for which he can only blame himself. It appeared that prior to this transaction, the assignor had pledged his interests in the estates, or perhaps in only one of them, as security for a loan from one Banes for, nominally, $300; this also, as the auditing judge infers, having been obtained through the agency of Mr. James. When this loan matured, the bearer was unable to pay, and the interests were sold at auction by Freeman & Company to one Hackett, acting, it would seem, on behalf of the lender; and with a liberality not usual among persons who engage in transactions of this kind with expectant legatees, it was offered to reconvey on payment of debt, interest and expenses. It was for the purpose of obtaining money for this purpose that the assignment to Hallman was made, and of the sum received, $327.75 were paid to Mr. Arthur W. Depue, representing the lender.

The past experience of the auditing judge, especially that of Lardner's Estate, 16 W. N. C. 51, and Kuntzleman's Estate, No. 26, October term, 1879, caused him to look at this transaction with great suspicion, inclining him to the view that the assignment, though absolute on its face, was intended merely as security for money loaned; but the admission that it was intended as an absolute assignment in the case of the interest in the Lower estate, the only defense being that the interest in the Jackson estate was included fraudulently, made this impossible, and hard as it may seem and actually is, there appears to be no escape from the conclusion that this assignee, who insists on the strict letter of his purchase, is entitled to the $2,000 legacy in this estate, in addition to the $778.05 which he will receive under the adjudication in the estate of Wm. S. Lower—making in all $2,778.05, or more than five times the amount paid to the assignor in October, 1900—less than one year before the termination of the life estate.

The assignee can well afford to deal generously with the assignor under these circumstances, but he cannot be compelled to do so if his conscience will permit him to retain the entire amount from the former owner whose necessities compelled him to part with it.

The testimony shows that as early as October 4, 1900, an offer has been made through Albert James to purchase the

interests in both estates for $500 which was not accepted; and after this an attempt seems to have been made to borrow $1,000 on the legacy given by the will of the father, the mother to join in the obligation, but this was unsuccessful; then there was an offer, October 19, 1900, to sell the interest under the grandfather's will, and this failing, both interests were sold, October 27, 1900, by the assignment now before the court, under which the auditing judge is compelled to award the legacy of Francis H. Jackson to the assignee, Henry S. Hallman.

On exceptions, HANNA, P. J., filed the following opinion :

We have carefully examined the evidence presented and notwithstanding the earnest argument of counsel for exceptant cannot reach any other conclusion than that expressed by the auditing judge. The vendor is no doubt dissatisfied with and repents the bargain he made, but he has no one other than himself to condemn. As said by BLACK, C. J., in Davidson v. Little, 22 Pa. 245: " This case does not seem to be within the rule which sets aside an executed contract with an heir for mere inadequacy of price. Norris was not an heir expectant. The estate was fully vested in him. The fact that another had a life estate in one half of it makes no difference or at most is a very slight circumstance."

This fully applies to the present case and the facts and circumstances here shown are similar to those in the case cited. The vendor had a vested interest which might not come into possession for years. He was necessitous and through a broker obtained a purchaser for his interest in the estate. The purchaser was a stranger to him and with whom he had no personal negotiations. The contract of sale was executed and the price agreed upon paid. No fraud was practiced by the vendee nor oppression used nor deceit employed by him. Under all the facts shown, we fail to discover any reason why the vendor should not be held to his bargain. It need only be said that Whelen v. Phillips, 151 Pa. 312, disposes of the question and is on all fours with the present case. There a legatee sui juris entitled upon his surviving his mother, sold his legacy of $4,666.66 for $1,000, to a person who stood in no trust relation to him. In an effort by the legatee to set aside his assignment it was held that in the absence of evidence of op-

pression or bad faith in the transaction, the sale passed a good title to the purchaser. The exceptions must accordingly be dismissed.

*Error assigned* was decree of the court.

*David C. Harrington,* for appellant.

*Chas. F. Linde,* for appellee, was not heard.

PER CURIAM, May 19, 1902:

The decree in this case is affimed on the opinion of Judge HANNA.

---

## Philadelphia, Appellant, *v.* Hestonville, Mantua and Fairmount Railroad Company. Philadelphia, Appellant, *v.* People's Passenger Railway Company.

*Street railways—Paving streets—Amendment—Statute of limitations— Notice.*

Where a city brings a suit against a street railway company to recover the cost of paving streets occupied by the tracks of the company, and it appears in the course of the suit that the company sued was under no charter, contractual or statutory obligation to pay the cost of paving the streets, the city cannot after the statute of limitations has run against its claim, be permitted to amend its statement so as to aver that the company had by lease or merger acquired the franchises and assumed the burden of another railway company, and that by reason of such assumption of obligation it was liable for the paving. Such an averment introduces an entirely new cause of action.

Where the ordinances of a city provide that street railways shall pave or repave the highways "when requested so to do by the chief commissioner of highways" or "after notice has been given to said company by the chief commissioner of highways," and that if the companies refuse or neglect to do the work, the city may do it at their cost, the city cannot recover the cost of paving or repaving without showing that a proper notice and request had been given to the company.

Argued March 27, 1902. Appeals, Nos. 25 and 26, Jan. T., 1902, by plaintiff, from judgment of C. P. No. 4, Phila. Co., June T., 1893, Nos. 77 and 78, in cases of Philadelphia v. Hes-