Quarture, Appellant, *v.* C. P. Mayer Brick Company.

Argued October 3, 1949. Before MAXEY, C. J., DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*Albert C. Hirsch,* with him *Karl E. Weise* and *Hirsch & Shumaker,* for appellant.

*J. Frank McKenna, Jr.,* with him *J. Frank McKenna, Charles F. McKenna, David Silverblatt* and *Strassburger & McKenna,* for appellee.

OPINION BY MR. JUSTICE LINN, November 14, 1949:

The plaintiff appeals from a decree dismissing his bill for specific performance of a written contract to convey real estate located in Allegheny County, Pennsylvania. The defendant is a corporation of the State of New Jersey, registered to do business in Pennsylvania. The terms of the contract are not in dispute. It was dated February 3, 1947; the consideration was $13,500 and the time for performance was stated to be "on or before April 30, 1947." On July 27, 1943, the Court of Chancery of New Jersey enjoined defendant from transacting business until certain delinquent taxes were paid. This action was followed on January 20, 1944, by a proclamation by the governor of New Jersey declaring defendant's charter inoperative and void. Thereafter, pursuant to the payment of taxes and appropriate proceedings in New Jersey, a certificate of reinstatement dated May 23, 1947, was issued to the defendant by the proper authorities of New Jersey.

It will be observed that the contract in suit was made during the period in which defendant's charter was void pursuant to the action of the state of its origin and during which its officers were subject to the injunction. The contract had been drawn in the corporate name, was signed by its president and secretary and contained the corporate seal. It provided: "It is understood that one of the shareholders of the Seller [the defendant] is acting as a Fiduciary, and in the event Seller receives, prior to the delivery of the deed, an offer for the property which the Seller considers to be a substantially better one, Seller, at any time before execution and delivery of the deed, reserves the right to return hand money then paid, without interest, and if this is done there shall be no further liability on the part of any party hereto." The learned chancellor (MCNAUGHER, J.) found that May 5, 1947, defendant "received a substantially higher offer for the real estate

involved, to wit, the sum of $15,000 . . ." and notified plaintiff in writing of that fact and "invited them to make a higher offer but none was forthcoming from them or either of them." Accordingly on June 20, 1947, defendant agreed to sell to the parties offering $15,000 and returned to plaintiff the down-money received from him. The plaintiff brought this suit May 24, 1947.

In decreeing or refusing specific performance much depends on a wise exercise of judicial discretion (*Girard Mammoth Coal Co. v. Raven Run Coal Co.*, 275 Pa. 439, 443, 119 A. 495 [1923]) to be exercised in the light of all the circumstances appearing in the transaction. These circumstances seem to have been carefully considered by Judge MCNAUGHER. In the course of his opinion he said: "There is not the slightest evidence, or suggestion even, of lack of good faith and honest dealing on the part of the defendant—quite the contrary. Whatever may be said of the correctness of the legal position which it took throughout the period beginning with its first negotiations with Ciaffoni, the transcript of the testimony clearly indicates that the officers of the defendant believed that, after taking preliminary steps looking to a sale and transfer of the title of the real estate, they were prevented by law and the express injunction of the Court of Chancery of the State of New Jersey, where the corporation charter was granted, from proceeding to a consummation of the sale and the execution of a deed. Also we find that the plaintiff, before he executed the agreement, and his attorney afterward, were fully informed by the trust company of the necessity of securing a reinstatement of the charter and the dissolving of the injunction before a deed could be given. . . .

"Time was not of the essence of the contract to sell the real estate. There was no provision in the agreement on the subject. The seller, under ordinary circumstances, would have had a reasonable time after April 30, 1947,

within which to fulfill its obligation. Cochrane v. Szpakowski, 355 Pa. 357, 363, 49 A. 2d 692 (1946). The five days that elapsed before the receipt of the higher offer did not constitute an unreasonable time. This is particularly so in the light of the fact that the plaintiff and his counsel knew the defendant was awaiting the reinstatement of the charter and the dissolving of the injunction and plaintiff's attorney recognized the desirability, if not the actual necessity, of securing certificates from the State of New Jersey."

Both parties agree that the transfer of the title to this land is governed by the law of Pennsylvania. Sec. 215, Restatement, Conflict of Laws; *Wolfe et al. v. Lewisburg Trust & Safe Deposit Co.*, 305 Pa. 583, 589, 158 A. 567 (1932). Section 158, Restatement, Conflict of Laws, states: "If a corporation is dissolved by the state of incorporation, another state will recognize that the association has been deprived of the legal attributes of incorporation; and if the exercise of powers incident to incorporation is suspended by the state of incorporation, this suspension will be effective in another state." See Sec. 158, illustration 2, p. 229.

The decree of the court of chancery of New Jersey contained the following: ". . . that said corporation, its officers and agents, and each and every of them, be and they are hereby enjoined and commanded to desist and refrain from the exercise of any franchise or the transaction of any business until the payment of said tax, the interest due thereon and the costs of this application, or until our said court shall make other order herein." Thereafter, as we have said, the Governor of New Jersey declared defendant's charter "inoperative and void." The federal constitution in Article IV, section 1, provides that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." The Act of Congress passed pursuant to that provision enacts: "And the said records and

judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." U. S. Rev. St. Sec. 905, U. S. Comp. Stat. 1916, p. 243, title 28 U.S.C. 1940 ed. Sect. 687, as amended by title 28 U.S.C. 1948 ed. Sect. 1738. Whether the statute or the rule of comity be applied, the courts of this Commonwealth will give effect to the judicial decree of the Court of Chancery of New Jersey operating in personam, and the court below properly declined to make an order which would require defendant to violate the injunction. So long as the injunction was in effect the court properly treated defendant's officers as without power to bind the defendant by the contract of February 3, 1947. In such circumstances, the courts of this State will not require them to incur the penalties which the New Jersey courts had power to impose:* compare *Wettengel v. Robinson et al.*, 288 Pa. 362, 136 A. 673 (1927). On May 23, 1947, after the proceedings in New Jersey resulting in reinstatement of the charter and dissolution of the injunction, the defendant was competent to make a contract of sale or, to adopt that agreed upon in February, 1947.

We find no valid reason to differ from the conclusion of the learned court below holding that defendant had the right to exercise the reservation to receive offers in excess of the price which the plaintiff agreed to pay; plaintiff declined to meet the new offer.

Decree affirmed at appellant's costs.

---

* Section 458 of the Restatement, Contracts, provides: "A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited . . . (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."