Oreovecz *v.* Merics, Appellant.

Argued April 20, 1955. Before STERN,. C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James G. Kellar,* with him *Martin H. Philip,* for appellant.

*Albert H. Heimbach,* with him *Sidney R. Webb,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 23, 1955:

This is an appeal from a decree to compel specific performance of an agreement for sale of real estate.

On December 29, 1952, the defendant John Merics, after a conversation with the father of Joseph J. Oreovecz, the husband-plaintiff, showed Joseph J. Oreovecz and Edith M. Oreovecz, his wife, the premises he had for sale, which he offered to sell for $4,000. On the following day, December 30th, Joseph Oreovecz advised Merics he accepted the offer. On December 31st both parties met in the office of Attorney Sidney

R. Webb and signed an agreement of sale, Oreovecz giving Merics $100 as down payment to bind the bargain. It was also agreed that Oreovecz was to buy Merics' furniture for the sum of $500.

A week or two later Merics notified Oreovecz that he was unwilling to part with the property at the price agreed upon and sought to return to Oreovecz the down payment, offering to give also an additional $100. The plaintiff insisted on performance of their mutual commitments and made a valid tender of the purchase price under the terms of the agreement. Upon further refusal of the defendant to deliver the deed to the property, this action in equity was begun.

The defendant contended in the Court below that the agreement of sale was not binding because the defendant was drunk at the time of the signing, that he does not write or read English and that the consideration was inadequate.

It was testified that shortly before the execution of the agreement of sale the defendant had emptied several glasses of whiskey and beer, but there is no evidence that this consumption of alcohol had disturbed his mental processes any more than they may have been generally disturbed by alcohol since it would appear that he was a man of deep thirst. Furthermore, the transaction was not a hasty one admitting of no reflection. It was the defendant who initiated the proposition of the sale three days before the signing, it was he who took Oreovecz and his wife through the house exhibiting its attractions and extolling its merits. So satisfied was Merics with the intended sale and so adjusted was he to the anticipated separation from his house that he proceeded to make inquiries about lodging in a boarding house. That he was entirely oriented on what he was doing is further evidenced by the fact that of his own volition on the night

of the signing he personally obtained his deed from a safety box and conveyed it to the lawyer's office: "Q. Where did you get the deed that you took over to Mr. Webb? A. Home in my house . . . Q. Where was the deed in your house? Where did you keep the deed? A. In the safety box. Q. You have a safety box? A. Yes, sir. Q. Where did you keep your safety box? A. In the room. Q. What room? A. Where I sleep. Q. Upstairs? A. Yes. . . . Q. So then you went upstairs and you got the deed? A. Yes."

So aware was Merics that he was disposing of his house and therefore would have no use for furniture that he called upon an auctioneer to appraise the value of the furniture and he agreed, as already shown, to sell it to the plaintiffs for $500.

Although the defendant stated he does not write or read English he is not deficient in language capabilities. He speaks and understands German, Hungarian, Slovak and Wendish. Oreovecz's father, to whom Merics first mentioned his offer to sell the property, is a fellow-Wend and it was in their native tongue that they discussed the transaction. Furthermore, Merics has lived in the United States 46 years and has American-born children so that it could not be said he would be entirely unfamiliar with the English language.

With regard to inadequacy of consideration, the defendant asserted that he had had an offer for the property of $5,000 from a Paul Berger, but the Chancellor found that Merics had told Oreovecz that he would rather sell the property to him (Oreovecz) because Oreovecz would pay quickly whereas Berger's money "was to come through a GI loan on his son-in-law." While $4,000 was probably a rather attractive purchase price, the record does not show any evidence of fraud or unfair conduct between the parties which would make the matter of consideration one for

equity's intervention. In *Welsh et ux. v. Ford et ux.,* 282 Pa. 96, 99, this Court said: "Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance . . . 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded,—such as fraud, mistake or illegality.' "

The mere fact that the defendant might have been able to obtain more than $4,000 for his property does not of itself prove that he was imposed upon. The negotiations covered several days, there was no evidence to justify the assumption that, either through intoxication or deficiency in education the defendant lacked sufficient intelligence and mental alertness to understand thoroughly what he was doing from the time the negotiations began until the agreement of sale was signed.

We see no reason, therefore, for disturbing the Chancellor's findings. As we stated in *Rupniewski v. Miazga,* 299 Pa. 190: ". . . the chancellor had the witnesses before him and was in a better position to judge of their credibility than we are from the printed record. The general rule applicable in controversies of this kind . . . is stated in Crick v. Paull, 287 Pa. 431, 435, as follows: 'The findings of the chancellor are entitled to the weight of a jury's verdict, and where supported by evidence, though in dispute, are controlling here . . .'"

Decree affirmed. Costs on the appellant.