571 A.2d 1055

**Homer M. WAGNER and Robert N. Wagner,**

v.

**ESTATE OF Ansley C. RUMMEL, Francis Crays and Agnes Wells, Administrators, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1989.

Filed Feb. 20, 1990.

Reargument Denied March 23, 1990.

556

James G. Callas, Kittanning, for appellants.

Blair F. Green, Kittanning, for appellees.

Before McEWEN, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

Defendant–Appellants filed the instant appeal from an Order of the trial court which granted the Plaintiff–Appellees' request for specific performance with regard to an agreement providing for the sale of land in Indiana County.[1] The Defendant–Appellants include the Estate of Ansley C. Rummel, deceased, and his daughters, Frances Crays and Agnes Wells, who serve as Administrators of his Estate. The agreement in issue, which will be more fully described below, provided that the Plaintiff–Appellees could purchase some 16 acres of land for the sum of $550.00. After a trial, the Court issued a Decree Nisi, ordering the Appellants to convey the property to the Appellees upon tender of $550.00 by the Appellees. Exceptions to the Decree Nisi were

1. This matter was originally appealed to the Commonwealth Court, which transferred it to our Court.

denied by the trial court, and a final order entered thereon. This appeal arises from that Order.

A detailed review of the pleadings filed by the parties is appropriate. On June 26, 1986, the Plaintiff–Appellees filed a Complaint for Specific Performance, consisting of eight numbered paragraphs. After identifying the parties, the Complaint recited that the Decedent, Ansley C. Rummel, had owned 16 acres of land in Washington Township, Indiana County. The description of the property was set forth. The Complaint further stated that on March 1, 1979, the Decedent had entered into an agreement with the Plaintiffs wherein he leased the land to them for the purpose of raising and marketing Christmas trees. The Complaint also declared that in the lease agreement, the Decedent had given the Plaintiffs the right to purchase the land upon his death for the total sum of $550.00. In addition, the Complaint stated that the agreement provided that if she survived the Decedent, one Alice Seger should continue to enjoy the right to live in a house on the property until her death, or until she released such right in writing. It was noted in the Complaint that Alice Seger predeceased Mr. Rummel. The Complaint then recited that the Estate and the Administrators had been notified of the Plaintiffs' request to exercise the option to purchase the property but that the Appellants were not willing to honor the purported option. Finally, the Complaint stated that the Plaintiffs had handled all of the business affairs and other matters of Mr. Rummel for many years prior to his death, and that Mr. Rummel had inserted the amount of $550.00 in the paragraph of the lease agreement which gave the Plaintiffs the option to purchase the property. A copy of the agreement was attached as an exhibit to the Complaint.

On July 21, 1986, the Defendant–Appellants filed an Answer to the Complaint, with New Matter. In that document, responding paragraph by paragraph, they admitted most of the allegations in the Complaint. However, they denied the allegation that the sale price for the property was $550.00. In their Answer, the Appellants asserted that

the said sum was written in by a person other than the Decedent. Further, the Appellants maintained that the Plaintiffs did not handle the business affairs of the Decedent prior to his death. In their New Matter, consisting of Paragraphs Nos. 9 and 10, the Appellants averred that the Decedent did not comprehend fully the understanding set forth in the agreement, and that he never appeared before a notary public to have his signature acknowledged. They urged that the court interpret the sum in the Agreement to be $55,000.00, rather than $550.00. All of that was expressed in Paragraph No. 9 under New Matter. In Paragraph No. 10, the Defendants asserted that upon the receipt of $55,000.00, they would execute and deliver a deed to the Plaintiffs.

The Plaintiffs, on August 18, 1986, filed a Reply to New Matter. They denied Paragraph No. 9 of the Defendants' New Matter, and averred that the Decedent did not see or talk to his daughters, the Defendant Administrators, for approximately 30 years. Further, it was asserted that the Decedent was not on speaking terms with them nor were they in the area when the transaction took place. Paragraph No. 9 of the Plaintiffs' Reply to New Matter further declared that the Decedent understood the amount and filled in the amount himself at the time he executed the agreement, that he appeared before a notary public, and that the price of $550.00 was correct and not intended to be more than that. Finally, still in Paragraph No. 9, the Plaintiffs asserted that the Decedent at various other times conveyed property to other persons for very small amounts of money. Finally, in Paragraph No. 10, the Plaintiffs denied the allegations of Paragraph No. 10 of the Defendants' New Matter, and also averred that the deed should be executed and delivered to them upon receipt by the Defendants of the sum of $550.00.

On September 23, 1986, the Defendants filed another document entitled "New Matter". This document included two additional paragraphs. In Paragraph No. 11, the Defendants asserted that the agreement for the sale of proper-

ty was obtained by fraud, misrepresentation and/or undue influence on the part of the Plaintiffs. In Paragraph No. 12, the Defendants maintained that the Agreement had never been signed by the Decedent.

The Plaintiffs responded on October 9, 1986, by filing Preliminary Objections to the Defendants' additional New Matter which had been filed on September 23, 1986. In these Preliminary Objections, the Plaintiffs maintained that Paragraph No. 11, which alleged fraud, misrepresentation and undue influence, had not been averred with sufficient particularity and specificity. With regard to Paragraph No. 12, the Plaintiffs pointed out that after the Defendants had alleged fraud in securing the Agreement, they then maintained that the agreement in question was never signed by the Decedent. The Plaintiffs argued that such affirmative defenses were improper because they were inconsistent.

On May 18, 1987, after considering the Plaintiffs' Preliminary Objections to the additional New Matter, the trial court issued an Opinion and Order. The court ruled that the averments of fraud, misrepresentation, and undue influence contained in Paragraph No. 11 of the additional New Matter had to be amended to state a more specific claim. The Court found the Plaintiffs' second objection, regarding the alleged inconsistency between Paragraph Nos. 11 and 12 of the additional New Matter, to be without merit. The court ruled that such inconsistent defenses could be asserted in the alternative.

On June 8, 1987, the Defendants filed a pleading entitled Amended New Matter. This document contained only one paragraph, which was described as "Amended Paragraph 11". It declared that the sale figure for the property was placed in the agreement after Plaintiff Robert N. Wagner had obtained the signature of the Decedent on the document. Further, it alleged that at the time of the Agreement, the Plaintiff had knowledge that the "defendant" (presumably a reference to the Decedent) did not know how to write a sum of money "... over and above $10.00."

On June 22, 1987, the Plaintiffs filed a Reply to New Matter, responding to Amended Paragraph No. 11 of the Defendants' additional New Matter. The Plaintiffs denied the allegations by Defendants, and also averred that the Decedent had placed the figure of $550.00 in the agreement as the option purchase price, and that he did know how to write sums of money over and above $10.00.

The trial commenced on May 13, 1988. On July 20, 1988, the court issued a Decree Nisi, ordering that the Defendants, as Administrators of the Estate of Mr. Rummel, prepare, execute, and deliver to the Plaintiffs a deed for the property, upon payment to them of $550.00 by the Plaintiffs.

On August 2, 1988, the Defendants filed Exceptions to the Order, contending that if the agreement would be enforced it would be unconscionable. In a Reply to the Exceptions, the Plaintiffs denied that the agreement was unconscionable, and also pointed out that the issue of unconscionability had not been raised by the Plaintiffs in pleadings or at the trial. Subsequently, the trial court issued an Opinion and Order denying the Defendants' Exceptions. The Opinion explained that the issue of unconscionability had never been raised by the Defendants as a defense through preliminary objections, answer, or reply. The trial court concluded that the issue of unconscionability had to be considered to have been waived, pursuant to Pa.R.C.P. 1032. Further, the trial judge determined that unconscionability is similar to other defenses such as estoppel and laches, which are required to be raised as new matter pursuant to Pa.R.C.P. 1030. Thus, the trial court dismissed the Exceptions.

On the instant appeal, the Appellants continue to maintain that the agreement in issue could not properly be enforced by the trial court because it was unconscionable. Further, the Appellants contend that unconscionability is a rule of law which does not have to be pleaded in order to be raised. It is evident that the disposition of this appeal requires that we review the rules applicable to a trial

court's consideration of a request that it order specific performance. and also that we examined the doctrine of unconscionability.

A number of guidelines are well-established with regard to requests that a court order the specific performance of a contractual obligation. A decree of specific performance involves the exercise of the equity power and discretion of the court. *Duc v. Struckus*, 345 Pa. 65, 26 A.2d 897 (1942). The discretion of the Chancellor must be exercised in a specific performance case in accordance with accepted judicial principles. *DiPompeo v. Preston*, 385 Pa. 512, 123 A.2d 671 (1956). A decree of specific performance of a contract is not a right, but is a matter of grace, and will not be granted unless the party seeking such relief is clearly entitled to it, and the Chancellor believes justice requires such a decree. *Mrahunec v. Fausti*, 385 Pa. 64, 121 A.2d 878 (1956). In decreeing or refusing to require specific performance of a contract to convey real property, a great deal depends upon the wise exercise of judicial discretion, in light of all circumstances appearing in the transaction. *Quarture v. C.P. Mayer Brick Co.*, 363 Pa. 349, 69 A.2d 422 (1949). The court of equity should not order specific performance where it appears that hardship or injustice will result to either of the parties. *Snyder v. Bowen*, 359 Pa.Super. 47, 518 A.2d 558 (1986); *Barr v. Deiter*, 190 Pa.Super. 454, 154 A.2d 290 (1959). Moreover, specific performance may only be granted where no adequate remedy at law exists. *Cimina v. Bronich*, 517 Pa. 378, 537 A.2d 1355 (1988).

The trial court in this case made it clear that it did not consider the doctrine of unconscionability because the Defendants failed to affirmatively plead it in preliminary objections or in their Answer or New Matter. Unconscionability is a defensive contractual remedy which serves to relieve a party from an unfair contract or unfair provision of a contract. This basic explanation of the doctrine was recognized by our Court in *Germantown Manufacturing Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985), a

decision which included an excellent and well-reasoned discussion of unconscionability. One of the most oft-cited statements of the meaning of the doctrine was provided by the United States Court of Appeals for the District of Columbia Circuit in *Williams v. Walker–Thomas Furniture Company,* 350 F.2d 445, 449 (D.C.Cir.1965): "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." This explanation was cited with approval by our own Supreme Court in *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222 (1981). In *Germantown Manufacturing Co. v. Rawlinson, supra,* our Court also noted with approval the pronouncement of the Supreme Court of New Jersey, in *Kugler v. Romain,* 58 N.J. 522, 544, 279 A.2d 640, 642 (1971), regarding the doctrine: "The standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact, and observance of fair dealing."

■ As discussed earlier, the trial court in this case explained that it did not consider the issue of unconscionability because it had not been affirmatively pleaded by the Defendants. A recognition of the meaning of the doctrine, and consideration of its proper application, leads us to the conclusion that the trial court failed to adhere to proper standards of equity in its consideration of Plaintiffs' request for an order compelling specific performance. The Chancellor had a duty to examine whether hardship or injustice would result to the Defendants if the Plaintiffs' request for specific performance were granted. As we have discussed, the doctrine of unconscionability requires some measure by the court of the fairness of the contract in issue, and an evaluation of whether it was unreasonably favorable to the Plaintiffs. Such concepts could not be ignored in the proper exercise of the trial court's equity responsibilities in this case, whether or not the Defendants specifically raised unconscionability as an affirmative defense in their pleadings. Quite simply, the Chancellor was

not free to ignore issues of fairness and contractual injustice.

In *Germantown Manufacturing Co. v. Rawlinson, supra,* the appellant sought the reversal of a trial court order which granted the appellee's petition to open a judgment which had been entered by confession. In affirming the trial court, our Court pointed out that such a petition appeals to the equitable powers of the court. Moreover, and highly relevant to the instant case, we found the doctrine of unconscionability to be applicable, even though the appellee never specifically identified that defense in her argument. The same rationale is applicable in this case.

The record developed in the trial court in this case makes it impossible to ignore significant concerns regarding unconscionability. The only evidence regarding the value of the property was testimony that it was worth $55,000.00 to $60,000.00, roughly 100 times what the Plaintiffs sought to pay for it. Even without such evidence, a price of $550.00 for 16 acres of land, with a home on it, raises immediate questions of fairness, and whether such a price was unreasonably favorable to the Plaintiffs. The agreement had been prepared by the Plaintiffs, who admitted that they handled some business affairs for Mr. Rummel. There was significant testimony in the record to indicate he was unsophisticated at best, if not illiterate, regarding business matters and legal documents. He had to have others make out checks for him and handle other similar tasks. He had little or not schooling. Although the Plaintiffs maintained, in their pleadings, that the Decedent's daughters, Frances Crays and Agnes Wells, had no contact with him for 30 years, the evidence at trial was uncontradicted that they saw him and attended to his needs with great frequency. They visited him weekly, cleaned his home for him, and handled his personal and business needs. Further, although the Plaintiffs alleged in their pleadings that Mr. Rummel frequently sold property at less than full value, no evidence of such prior conduct was educed. It appears that the trial court ignored all of these factors, which should

have been considered in weighing the fairness and justice of the Plaintiffs' request for specific performance. Rather, the Opinion of the trial court indicates its concern was limited to the issues of whether the Decedent signed the document and inserted the $550.00 figure.

In light of these conclusions, it is apparent that we must vacate the Order of the trial court and remand this case to that court for further consideration, with due regard to the doctrine of unconscionability. In fairness to the parties, the court will be required to accept further testimony on the issue of unconscionability.

In remanding the case, we would be remiss if we did not discuss one other factor which should also be addressed by the trial court. We have already pointed out that specific performance of a contract should be denied if there is an adequate remedy at law available. From our review of the record, it appears that the Plaintiffs may have a right to seek a money judgment. In such proceedings at law, questions of unconscionability could also be raised as a defense. Moreover, evidence from competent appraisers and other experts concerning the value of the property could be considered, if appropriate, and the true value of the property could be determined.

However, the resolution of all of these issues and factual questions is appropriately vested in the trial court. A remand of this case will give the Chancellor an opportunity to evaluate all of the pertinent factors, applying appropriate equitable principles.

The Order of the trial court is vacated, and this case is remanded for further proceedings, consistent with this Opinion. Jurisdiction is relinquished.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent from the opinion of the majority. First, I would agree with the learned trial judge that unconscionability must be pleaded as an affirmative defense. Second,

assuming that unconscionability need not be pleaded affirmatively, I find that appellants failed to proffer sufficient evidence to support the majority's conclusion that the agreement was unconscionable.

The majority agrees with appellants that unconscionability is not a defense that needs to be pleaded affirmatively. However, the Pa.R.C.P. 1030 provides:

All affirmative defenses including *but not limited to* the defenses of accord and satisfaction, arbitration and award, assumption of the risk, consent, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter". A party may set forth as a new matter any other material facts which are not merely denials of the averments of the preceding pleading. (emphasis added).

Pursuant to Pa.R.C.P. 1032, generally, "[a] party waives all defenses and objections which he does not present either by preliminary objection, answer or reply."

Rule 1030 does not limit its application to those defenses therein specifically enumerated. Rather, the rule, via the phase "but not limited to", allows for the inclusion of additional defenses. See e.g., (*Fredricks v. Hamm*, 45 D.C.2d 687, 104 P.L.J. 298 (1968) (unconscionability is an affirmative defense which must be pleaded); *Iorfida v. Mary Robert Realty Co., Inc.*, 372 Pa.Super. 170, 539 A.2d 383 (1988) (in context of easement actions abandonment is an affirmative defense which must be pleaded). Rule 1030 should apply not only to those equity defenses specifically included in the rule, e.g. estoppel and laches, but also to equity defenses not specifically enumerated, such as unconscionability.[1]

**1.** Rule 1030 was last amended on December 16, 1983, effective July 1, 1984. In *Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 491

Herein, the majority concluded that unconscionability need not be specifically pleaded. In so doing, the majority relied in part upon the example of *Germantown Mfg. Co. v. Rawlinson, supra,* stating that "[In *Germantown Mfg.,*] we found the doctrine of unconscionability to be applicable, even though the appellee never specifically identified that defense in her argument." However, while the appellee in *Germantown Mfg.* did not argue the defense of unconscionability by name, she did aver in her pleadings the elements of unconscionability. 491 A.2d at 145. Thus, appellee did comply with the spirit, if not the letter, of Rule 1030. Instantly, it is undisputed that appellants did not plead any facts even remotely related to the doctrine of unconscionability and did not raise the issue of unconscionability until post-verdict motions. Moreover, in *Germantown Mfg.,* the discussion of unconscionability is simply dicta as the court therein had already determined that the contract was void because of fraudulent misrepresentation, material misrepresentation, fraud in the factum and duress.

Lastly, assuming the issue of unconscionability was properly before the lower court via appellants' post-verdict motions, I am convinced that appellants failed to present sufficient evidence to demonstrate unconscionability.[2] First, it is undisputed on appeal that the court below, based upon credible expert testimony, found that the decedent signed the contract and filled in the purchase price.

Second, appellants failed to proffer any credible evidence of the value of the property. The only evidence of the

A.2d 138, 145 n. 4 (March 29, 1985), we noted that "[t]he defense of unconscionability does not yet have the same long-standing historical legitimacy enjoyed by other methods of avoiding a contract such as mistake, duress, fraud and misrepresentation. It is also not yet as clearly defined as these traditional defenses. (citations omitted)." Thus, the reason that unconscionability is not specifically enumerated in Rule 1030 may be traced to the fact that the defense of unconscionability, at the time of last amendment to the rule, had yet to achieve the legitimacy of more traditional defenses.

2. Significantly, appellants' entire defense was that the purchase price for the property was written in the agreement after the decedent had signed the document because the decedent did not know how to write a sum of money "... over and above $10.00."

property's value was the opinion of Agnes Wells, co-administratrix of the estate and beneficiary under the will, who indicated she believed the property was worth $55,000 to $60,000. Cognizant of the rule that owners of property are considered experts when testifying as to the property's value, *Semasek v. Semasek*, 509 Pa. 282, 502 A.2d 109, 112 (1985), I would hold that such evidence of value was inadmissible and the trial court abused its discretion by allowing its admission. Agnes Wells was not the owner of the property, nor does the record show that she possessed any attributes which would qualify her as an expert on real estate valuation.

Third, the majority failed to consider the long standing relationship of the appellees and the decedent. The record indicates that the appellees were leasing the property in dispute as early as 1962, and a prior written lease for the property, dated January 30, 1965, appears of record. The appellees have used the land as a Christmas tree farm continuously to the present. The appellees aided the decedent in his business affairs and money management, including his taxes. Significantly, the decedent's brother, James Ralph Rummel, testified *that the decedent, at one time, was married to the mother of the appellees.* Further, the majority neglected to consider a very important aspect of the lease option contract, that being the clause which provided that, if Alice Seger survived the decedent, she would be allowed to reside on the property free of charge until her death.

The majority seems to focus upon the low purchase price of $550 compared to size of the parcel, 16 acres (residence included). One needs only to review the decision in *Snow v. Corsica Construction Co., Inc.*, 459 Pa. 528, 329 A.2d 887 (1974), to recognize the error in the majority's reasoning. Therein, our Supreme Court stated:

> Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel

performance: *Harris v. Tyson*, 24 Pa. 347, 360; *Graham v. Pancoast*, 30 Pa. 89, 97; Cunning's App. 67 Pa. 404; *Bowers v. Bennethum*, 133 Pa. 306, 19 A. 624; *Jackson's Est.* 203 Pa. 33, 52 A. 125 [(1902)]. 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded,—such as fraud, mistake or illegality.' *Frey's Est.* 223 Pa. 61, 65, 72 A. 317, 318 [(1909)]. Although relief in equity is a matter of grace only and not of right, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case, it does not follow that a decree for specific performance must be entered in all cases where the agreement is legally sound and the price adequate, but if the transaction be inequitable or unjust in it self or rendered so by matters subsequently occurring, specific performance may be denied and the parties turried over to their remedy in damages (*Rennyson v. Rozell*, 106 Pa. 407, 412), and, while no rule applicable to all cases can be announced, it may be said that specific relief will be granted if apparent that, in view of all the circumstances, it will subserve the ends of justice, and will be withheld where, on a like view, it appears hardship or injustice will result to either of the parties. *Rennyson v. Rozell*, supra; *Spotts v. Eisenhauer*, 31 Pa.Super. 89, 93.

*Welsh v. Ford*, 282 Pa. 96, 99, 127 A. 431, 432 (1925). See also *Payne v. Clark*, 409 Pa. 557, 560, 187 A.2d 769, 771 (1963); *Oreovecz v. Mexico*, 382 Pa. 56, 59, 114 A.2d 126, 128 (1955); *Rupniewski v. Miazga*, 299 Pa. 190, 192, 149 A. 193, 194–195 (1930).

*Snow*, 329 A.2d at 888–889.

Thus, even assuming that the evidence of property's fair market value was properly before the lower court, specific performance cannot be denied absent evidence of fraud, mistake or illegality. No such evidence was presented instantly. As stated by the trial court, "the defense clearly did not offer any credible testimony to show that the

agreement was not executed by the decedent, the blanks filled in by him or *that he did not understand the agreement."* Opinion and Order of Court filed July 20, 1988. Accordingly, I can find no reason to deny appellees specific performance of this contract for the purchase of real property.