## Schrack v. Eisenhower

C.P. of Clinton County, no. 1115-93 CV.

*David M. Weixel,* for defendant.
*Frank S. Miceli,* for plaintiff.

WILLIAMSON, *J.,* March 24, 1995—

### BACKGROUND

Plaintiff filed a complaint for specific performance of an agreement of sale dated August 7, 1993. The subject real estate was owned by Charles W. Lamey, a widower, who died on June 3, 1992. Decedent died testate and his will directed that all of his assets be sold and converted into cash to be given to his children in equal shares. The real estate[1] in question was put up for sale at a public auction on August 7, 1993. The sale was advertised as approximately 14.9 acres of undeveloped land consisting of two parcels to be sold as one parcel; deed book no. 146, page 218 and deed book no. 215, page 499; tax parcel numbers 27 & 25.

One hundred and thirty people registered for the auction. Several bids were received, of which plaintiff's bid of

---

1. The real estate in the estate consisted of a house and lot which had an appraised value of $45,900 (deed book 181, page 536); a parcel of ground (tax parcel no. 02-A-0025, deed book 215, page 499) which had an appraised value of $12,000; another parcel of ground (tax parcel 02-A-0027, parcel 1 in deed book 146, page 218) which had an appraised value of $17,942; another parcel of ground (tax parcel 01-A-007, parcel 2 in deed book 146, page 218) previously sold for $46,000 at an auction held on October 17, 1992; the final parcel of ground included in the assets of the estate was a .344 acre piece of ground which had been deeded to decedent's daughters (tax parcel no. 02-A-0007D). For purposes of this opinion, the term "real estate" refers only to tax parcels 25 and 27.

$7,900 was the highest (defendant says the original bid was higher). The auctioneer then negotiated with plaintiff to increase the bid. During the negotiations, plaintiff spoke only to the auctioneer and never spoke to defendant or her attorney. Plaintiff increased his offer to $13,000. The auctioneer informed defendant of the increased offer which she accepted. The $13,000 bid was announced and knocked down as the highest bid when no other bids were received.

Plaintiff signed a preprinted agreement which had been completed by her attorney, Robert Lugg. The agreement indicated the two parcels would be sold as one,[2] a 10 percent down payment was required, and $11,700 would be paid and the deed delivered on or before September 8, 1993. Plaintiff paid the $1,300 down payment at the time he signed the agreement of sale.

In early September 1993, plaintiff was advised that defendant was having second thoughts regarding the transaction. Plaintiff attempted to set a date, but defendant never communicated a date or time for closing. Therefore, plaintiff set a date and time and informed defendant. Defendant did not appear and has refused to accept the agreed upon purchase price or execute a deed.

Plaintiff commenced this equitable action seeking to enjoin defendant from encumbering or selling any part

---

2. The agreement of sale described the premises as follows:

"Approximately 14.9 acres of undeveloped land situate in Loganton Borough, Clinton County, Pennsylvania, more fully described as parcel no. 1 in deed book 146, page 218 and deed book 215, page 499. Both of these parcels to be sold as one.

"... SURVEY's—if a survey is required or requested by buyer, the cost thereof shall be the responsibility of the buyer."

of the land, seeking specific performance of the agreement of sale, and reimbursement of costs. Presently before the court is plaintiff's motion for summary judgment.

In her brief in opposition to the motion for summary judgment, defendant contends, after the auction, she discovered that an area known to her as "The Woods" was included in the sales agreement. Defendant alleges that the decedent had always informed his children that "The Woods" was to be theirs and that plaintiff was aware of such conversations or, at least, of decedent's intentions.

Subsequent to the signing of the sales agreement, the parties discovered that the parcels, which were originally thought to contain approximately 14.9 acres, actually totaled 21.618 acres. Tax parcel 25 contained 7.168 acres and tax parcel 27 contained 14.45 acres.[3]

Defendant argues that genuine issues of material fact exist as to the following issues: whether the parties were mutually mistaken concerning the acreage; whether plaintiff knew or had reason to know of defendant's mistaken beliefs and intentions; whether there is evidence of unfairness sufficient to make it inequitable to compel performance; and whether the description was sufficient to prepare a deed.

Pa.R.C.P. 1035 provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to

---

3. A survey of one of the parcels had been made on July 13, 1987. Defendant did not locate this survey until after the agreement of sale was signed on August 7, 1993. A survey of the other parcel was completed on October 26, 1993.

any material fact and the moving party is entitled to judgment as a matter of law.[4]

It is well settled that the power of summary judgment should be cautiously exercised. The record must be examined in the light most favorable to defendant. Judgment should be granted only if the case is free from doubt and the moving party's right to prevail is so clear that a trial would clearly be a fruitless exercise.

The intent of the parties to a contract is to be determined solely from the express language contained in the document. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982); *Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986). Further, any doubtful language is to be construed most strongly against the drafter, in this case, defendant's attorney. *Rusiski, supra* at 390, 515 A.2d at 510.

With respect to requests for specific performance, the Superior Court has stated,

"A number of guidelines are well-established with regard to requests that a court order the specific performance of a contractual obligation. A decree of specific performance involves the exercise of the equity power and discretion of the court. ... The discretion of the chancellor must be exercised in a specific performance case in accordance with accepted judicial principles. ... A decree of specific performance of a contract is not a right, but is a matter of grace, and will not be granted unless the party seeking such relief is clearly entitled to it, and the chancellor believes justice requires such a decree. ... In

---

4. Because this is an action in equity, there is no right to a jury trial. Therefore, both questions of law and of fact are for the court to decide.

decreeing or refusing to require specific performance of a contract to convey real property, a great deal depends upon the wise exercise of judicial discretion, in light of all circumstances appearing in the transaction. ... The court of equity should not order specific performance where it appears that hardship or injustice will result to either of the parties. ... Moreover, specific performance may only be granted where no adequate remedy at law exists." *Wagner v. Estate of Rummel,* 391 Pa. Super. 555, 561, 571 A.2d 1055, 1058 (1990). (citations omitted)

The court is satisfied no adequate remedy at law exists because plaintiff, as the owner of adjoining property, has a unique interest in the subject premises. Based on the following discussion, the court is satisfied that no hardship or injustice will result.

## INSUFFICIENT DESCRIPTION

Defendant has apparently abandoned her allegation that the description of the property in the agreement of sale was insufficient to identify the property intended to be conveyed. Since defendant's attorney did, in fact, prepare a deed which defendant refused to sign, such argument is without merit.

## UNCONSCIONABILITY

Relying upon the language of *Wagner, supra,* defendant argues that the granting of specific performance would cause her hardship or injustice because the provisions of the agreement of sale, specifically the total acreage and the purchase price, are unconscionable. As stated in *Wagner,* unconscionability has generally been recognized to include an absence of meaningful choice on the part

of one of the parties, together with contract terms which are unreasonably favorable to the other party. The determination of whether a contract is unconscionable is a question of law for the court. *Koval v. Liberty Mutual Insurance Company,* 366 Pa. Super. 415, 531 A.2d 487 (1987), *appeal denied,* 518 Pa. 619, 541 A.2d 746 (1988).

This court is satisfied that the record fails to establish any absence of meaningful choice on the part of defendant when she entered into the agreement of sale. While there is some dispute between defendant, her attorney and her auctioneer concerning the details of the negotiations with plaintiff, there is nothing to suggest that a material issue of fact exists with respect to her willingness to enter into the sales agreement. To the extent defendant relies upon the inference that her attorney failed to represent her properly, she is not without legal remedy.

With respect to the second element of unconscionability, there is nothing in the record that would justify a finding that the contract terms were unreasonably favorable to plaintiff. While an appraisal was made of the parcels in question by a local realtor, an examination of that appraisal suggests a substantial lack of professionalism in its preparation. Indeed, defendant seems to acknowledge that the appraisal was based solely upon the tax values as established by the county assessment records. A minimum of 130 bidders were registered for and attended the auction. Presumably many of those potential bidders were familiar with the topography and disadvantages of the subject parcels, including the potential that the parcels would be designated as wetlands. This court is of the belief that the fair market value of a parcel is established by the price which that parcel is knocked down for at a public

auction conducted by a responsible and experienced auctioneer after proper notice.[5]

## MUTUAL MISTAKE

Section 152 of the Restatement (Second) of Contracts provides as follows: "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in section 154." The mutual mistake in this case involves the substantial discrepancy in the acreage between that advertised in the sale notices (and contained in the agreement of sale) and the acreage as determined after the completion of the second survey. This court has no difficulty in determining that such a mutual mistake involved a basic assumption on which the contract was made and had a material effect on the agreed exchange of performances. The court rejects plaintiff's contention that the agreement was a "sale in gross." The court cannot agree, however, that there is a material issue of fact with regard to whether defendant bore the risk of the mistake regarding the acreage.

Section 154 of the Restatement (Second)[6] provides: "A party bears the risk of a mistake when (a) the risk

5. Defendant has not secured any additional appraisals which would suggest that the auction price was, in fact, "unconscionable" or too low. The suggestion that the court should consider the "sentimental value" of the parcels is rejected.

6. The determination of the applicability of section 154 of the Restatement to the facts is a function of the court as a matter of law.

is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so."

With respect to the first element, while plaintiff bore some risk that the acreage might be less than the anticipated 14.9 acres, such risk was equally applicable to defendant. The notice of sale and the agreement of sale specifically provided that the cost of any survey should be the responsibility of the buyer. Clearly, therefore, by virtue of the agreement of the parties, the risk of a discrepancy in the acreage was allocated to both plaintiff and defendant.

With respect to the second element, a review of defendant's deposition discloses that she had only limited knowledge with respect to the total acreage involved in the transaction, but treated her limited knowledge as sufficient to enter into the agreement of sale. The court is unable to imagine a situation in which the record more clearly could establish the applicability of section 154(b).

Finally, under all of the circumstances presented in this record, including the fact that defendant was arguably in possession of a survey of one of the parcels prior to the 1993 auction, this court has no difficulty in allocating to defendant the risk of a mistake regarding the actual acreage. Therefore, the court finds that defendant bore the risk of mistake and, therefore, is not entitled to avoid the terms of the agreement under a theory of mutual mistake.

## UNILATERAL MISTAKE

Section 153 of the Restatement (Second) of Contracts provides as follows: "Where a mistake of one party at the time of a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake ... and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." Here, defendant contends she was mistaken in her belief that "The Woods" was not included in the agreement of sale she entered into with plaintiff.

The court accepts defendant's argument that a material mistake was made by defendant and an issue of material fact exists with regard to whether plaintiff knew or had reason to know of defendant's misunderstanding. If, therefore, defendant does not bear the risk of the mistake under the provisions of section 154, the issue of unilateral mistake would remain for a trial.

As previously discussed with respect to mutual mistake, this court believes it to be obvious that the risk regarding the extent of the real estate to be conveyed was allocated to both parties by virtue of the failure of either to insist upon a survey as a specific condition of the agreement of sale. Moreover, a review of defendant's deposition establishes, to the court's satisfaction, that defendant ignored her limited knowledge with respect to the facts to which the mistake relates and relied on such knowledge as being sufficient. As previously discussed with respect to the acreage, regardless how the court would resolve the disputed issues

between defendant and her attorney, defendant and her auctioneer, and defendant and plaintiff, defendant's admissions with respect to her lack of knowledge of the precise location of "The Woods" and her limited discussions with anyone concerning the documents presented to her for execution, placed upon defendant the risk of her unilateral mistake.

Finally, this court, without any hesitation, imposes upon defendant the risk with respect to "The Woods" under section 154(c) on the ground that it is reasonable in the circumstances to do so. The record in this case, when considered as a whole, shows defendant to have been uncooperative, at best, if not outwardly hostile to her attorney's efforts to settle this estate; the sale in question occurred after previous attempts to sell the parcels; and the sale of the landlocked parcel without a right of way to Mill Street is patently unreasonable. This court finds no equitable justification for declining to place the risk of mistake upon defendant.

## DECREE

Now, March 24, 1995, based upon the within opinion, it is hereby ordered, adjudged and decreed as follows:

(1) Defendant shall, within 10 days of the date of this decree, execute the deed to Lee N. Schrack, or assigns, previously prepared by Robert Lugg, Esq. (or such other appropriate deed as may be prepared on her behalf) conveying those two certain parcels of land situate in the Borough of Loganton, Clinton County, Pennsylvania, less prior conveyances, and being the premises conveyed to Charles W. Lamey and Beryl H. Lamey, his wife, in Clinton County Deed Book no. 146, page 218 (parcel 1) and deed book no. 215, page 499.

(2) The conveyance as required herein shall be accomplished consistent with the terms and conditions of the agreement of sale between the parties dated August 7, 1993 and designated as exhibit "B" in plaintiff's complaint.

(3) The execution of the deed as required herein shall be conditioned upon payment by plaintiff of the sum of $13,000 which obligation shall be satisfied in part or in whole, by previous valid payments made to defendant if the instruments representing such payments remain valid and negotiable.

(4) Plaintiff's request for costs and attorney fees is denied.