J-E03003-23

2024 PA Super 47

MATTHEW 2535 PROPERTIES, LLC : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
RICHARD E. DENITHORNE AND :
PRISCILLA F. DENITHORNE :
:
Appellants : No. 285 EDA 2022

Appeal from the Judgment Entered March 4, 2022
In the Court of Common Pleas of Carbon County Civil Division at No(s):
18-1411

BEFORE: PANELLA, P.J., LAZARUS, J., STABILE, J., DUBOW, J.,
KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and
KING, J.

OPINION BY KUNSELMAN, J.: **FILED MARCH 15, 2024**

## I. Introduction

This case involves the sale of a restaurant which burned down after the parties signed a sales agreement but before they closed on the deal. A court of equity ordered specific performance[1] – namely, that the owners of the now-vacant land, Richard and Priscilla Denithorne (Sellers), transfer legal title to Matthew 2535 Properties, LLC (Buyer). The court directed Buyer to pay the purchase price of $400,000, minus the value of insurance proceeds that a third party received following the fire. On appeal, Sellers challenge the finding that they breached the sales agreement and the order of specific performance. We affirm the finding of breach, but we vacate and remand for a new trial on what the order of specific performance should be.

_____

[1] Specific performance is a court order directing a party to fulfill a contractual obligation. **See Lackner v. Glosser**, 892 A.2d 21, 31 (Pa. Super. 2006).

## II.  Factual & Procedural Background

Sellers purchased the subject property in 1992 for their sons (Vincent, Michael, and David Denithorne) to run a restaurant.  The three sons formed Denithorne Brothers, Inc.  That corporation rented the property from Sellers and held a liquor license.  Denithorne Brothers, Inc. closed the restaurant in early 2017.

Thereafter, Catherine Jaindl-Leuthe and her fiancé expressed interest in purchasing the property.  *See* N.T., 6/2/20, at 7-8.  Ms. Jaindl-Leuthe formed Matthew 2535 Properties, LLC to acquire the property.  She formed a separate company, Good Spirits, LLC, to acquire the liquor license from Denithorne Brothers, Inc. and the restaurant equipment and inventory from Sellers.

Over several months, the parties engaged in counseled negotiations. On January 13, 2018, the parties signed a sales agreement for the real estate at a purchase price of $400,000.  *See* Trial Ex. P-2 at 1, ¶ 3.  They set the closing for April 30, 2018 but gave Buyer two optional extensions of 30 days, with the contract terminating on June 30, 2018.  *See id.* at 1-2, ¶ 4(a).

Paragraph 16 of the agreement, "Risk of Loss/Condemnation," provided, "Seller[s] shall bear all risk of loss until closing and shall deliver the property in its current condition as of this date." *Id.* at 7, ¶ 16.  In the event of damage to the property, Paragraph 16 further stated, "Seller[s] shall [(1)] coordinate any remediation of casualty with Buyer or [(2)] arrange for the provision of the funds for remediation at closing and may leave the property in its damaged condition if the proposed insurance settlement is acceptable to Buyer." *Id.*

Finally, it required the parties to "cooperate and coordinate any remediation or assignment of proceeds to achieve the desired result of the Buyer without added cost to Seller[s]." *Id.*

On March 17, 2018, the restaurant was destroyed by a fire.

Nonetheless, Buyer wished to proceed with the sale. *See* N.T., 6/2/20, at 14, 16. Buyer expected Sellers "would get in touch" and the parties would "work out together how they would remediate the property or if [Buyer] could accept the property in its then-condition with any funds to . . . take the property back to where the restaurant was." *Id.* at 18.

Buyer made several requests to discuss the next steps and exercised its right to extend the closing date to give Sellers more time to coordinate remediation efforts. Sellers never met with Buyer to coordinate those efforts. Eventually, Buyer's attorney wrote to Sellers' attorney to set the closing for June 29, 2018. The letter also demanded Sellers assign to Buyer the proceeds from the insurance on the restaurant. *See* Trial Ex. P-6. Buyer's attorney advised Sellers that Buyer was "financially ready, willing, and able to go to closing on the property." N.T., 6/2/20, at 19.

Buyer assumed Sellers were insured or that they chose to be self-insured. *Id.* at 27. Buyer later learned that Sellers had no insurance. Importantly, Denithorne Brothers, Inc. had insurance on the restaurant, but that corporation was not a party to the sales agreement. Because Sellers had no insurance proceeds to assign to Buyer, they refused to appear at the closing on June 29th.

Buyer sued Sellers for breaching the sales agreement and asked the trial court for specific performance. Buyer did not name the sons or Denithorne Brothers, Inc. as defendants.

The matter proceeded to a bench trial, and Buyer presented evidence of the above facts. When counsel for Buyer asked one of the Sellers how much insurance proceeds Denithorne Brothers, Inc. received after the fire, Sellers' attorney objected. She argued:

> I don't think [the court of equity should] consider the equities [as Buyer contends]. What [the court should] consider is the actual cost for remediation. And we need an appraisal, or we're going to need a contractor's proposal. The amount of the insurance money is not relevant. What we need to figure out, if [the court] is going to order remediation, is how much remediation would be, and there is no evidence of that.

*Id.* at 57. The court sustained Sellers' objection.

In presenting their defense, Sellers testified to receiving a written, post-fire offer on the property from CNJ Holdings for $375,000. However, this offer included the liquor license, and no representative of CNJ Holdings testified as to the breakdown of the offer. **See id.** at 74-75.

The parties filed proposed findings of fact and conclusions of law, along with supporting memoranda of law. Eventually, the court issued an opinion and equitable decree in favor of Buyer.

The court found that the phrase "without added costs to the Sellers" in Paragraph 16 of the sales agreement was ambiguous. **See** Opinion and Order, 7/9/21, at 11. Because neither party had offered parol evidence to clarify the

- 4 -

ambiguous phrase, the court found itself forced to rely on the other sentences of Paragraph 16 to interpret the contract. In its opinion, the plain language of those sentences clearly and unambiguously placed the risk of loss on Sellers until closing. Thus, the sales agreement required Sellers to deliver the property to Buyer "in its current condition," as of January 13, 2018. *Id.* at 11-12. Because Sellers failed to do so, the equity court found them to be in breach.

The court ordered specific performance of the contract at the purchase price of $400,000, "minus the amount of insurance proceeds paid to Denithorne Brothers, Inc. for the loss of the restaurant structure, excluding therefrom any amount paid for the loss of equipment and inventory contained within the structure." *Id.* at 16-17. The court considered this to be equitable, given the unique circumstances of this case.

It offered the following rationale for the order of specific performance:

> because there was no testimony or evidence presented as to the value of the damaged and destroyed restaurant, the insurance proceeds provide the best estimate as to the true value of that structure . . . [Buyer] is, in effect, receiving the value of the insurance settlement as negotiated by the parties in the event of a loss and a failure to remediate on the part of [Sellers].

*Id.* at 14-15.

Sellers sought post-trial relief, which was denied. This appeal followed. Initially, in a split decision, a three-judge panel of this Court reversed and

- 5 -

granted judgment to Sellers, as a matter of law.[2]  Buyer asked for reargument before this Court *en banc*, which we granted.

### III.  Analysis

Sellers raise the following four claims of error on appeal:

1.      Whether the [equity] court erred in determining that Sellers breached the agreement of sale, where the agreement provided that in the event of a loss, the Sellers were only obligated to coordinate remediation if they could do so without added cost to themselves?

---

[2] A majority of the panel held that Sellers did not breach, because Paragraph 16 did not explicitly require Sellers to obtain insurance or to remediate without added costs to themselves.  The majority also noted Buyer could have had its attorney use more detailed language to explain what the parties should do in the event of damage to the restaurant.  Thus, the majority concluded that, as the parties never agreed upon a post-fire sales price, both sides were free to walk away from the deal.  Additionally, the majority found that the equity court erred by subtracting the amount of the insurance proceeds from the purchase price.  Because the amount of insurance proceeds was unknown and excluded as irrelevant, the majority held that their inclusion in the order of specific performance was speculative.

The dissenting judge claimed the majority substituted its factual findings for those of the equity court and failed to defer to that court's finding that the clause "without added costs to Sellers" was ambiguous.  The majority did not analyze whether the equity court's interpretation of the ambiguous phrase was unreasonable, especially when read in context of the risk-of-loss paragraph as a whole.  In the dissent's view, "without added cost to Sellers" only modified the phrase "the assignment of [insurance] proceeds."  Thus, if (and only if) Buyer elected the insurance proceeds, then those proceeds were Buyer's sole recovery.  Furthermore, the dissent endorsed the order of specific performance as the equity court had fashioned it.  By ordering Sellers to close for the purchase price, minus the amount of insurance proceeds, the court of equity found that this formula represented the value of the property after the fire.  The dissent agreed with the equity court's math, because the sales agreement provided for insurance proceeds to serve as a substitute measure of remediation costs, if the parties' negotiations over remediation failed.

2.     Whether the [equity] court erred in determining that Sellers breached the agreement of sale where the agreement provided that settlement was to occur on or before June 30, 2018, but Buyer refused to proceed with the sale on or before that date?

3.     Whether the [equity] court erred in granting specific performance where the order led to an inequitable result and failed to properly assess the value of the property?

4.     Alternatively, whether the [equity] court erred in valuing the property as the purchase price less "the amount of insurance proceeds paid to Denithorne Brothers, Inc. for the total loss of the restaurant structure, excluding therefrom any sum paid by the insurance company for the loss of personal property contained within the restaurant" where the only evidence submitted at trial was that the property's post-fire value was $375,000?

Sellers' Brief at 2 (capitalization removed).  We address each issue in turn.

A.     Whether Sellers Breached

First, Sellers contend the equity court erroneously interpreted Paragraph 16 of the sales agreement when it found them in breach.  Although Paragraph 16 provided, "Seller[s] shall bear all risk of loss until closing and shall deliver the property in its current condition as of this date," in their view, that sentence was negated by the clause "without added costs to Sellers," which appears later in the paragraph.  Trial Ex. P-2 at 7, ¶ 16.

Sellers claim they were only obligated to coordinate remediation of the property, "if they could do so without added cost to themselves."  Sellers' Brief at 11.  According to Sellers, "it is clear by the plain language of the contract that the parties contemplated that [Sellers'] maximum exposure, in the event of loss, would be the amount, if any, of their insurance proceeds."  *Id.* at 14.

- 7 -

They "are not able to coordinate remediation of the property without added cost, [because] they did not carry insurance on the property." *Id.* at 15. Thus, Sellers claim that they did not breach the sales agreement.

This argument suffers a fundamental flaw, because Sellers failed to raise and address a preliminary issue regarding contract ambiguity. They ignored the finding of the equity court that the phrase upon which Sellers chiefly rely – *i.e.*, "without added costs to Sellers" – was ambiguous. As a prerequisite for us to adopt Sellers' interpretation of that phrase, we would first have to review and reverse the finding of ambiguity.

However, Sellers do not challenge that finding on appeal.[3] Instead, they assume that that phrase is **unambiguous**, a presumption that is fatal to their appellate argument. In order for us to substitute Sellers' interpretation of the clause for the equity court's finding of ambiguity, Sellers needed to convince us that this finding was erroneous. They make no such claim.

Also, Sellers disregard our narrow scope of review for an ambiguous contract. "While unambiguous contracts are interpreted by the court as a

_____

[3] We note that Sellers copied, verbatim, their pre-decree memorandum of law to the equity court as the argument section in their appellate brief. **Compare** Sellers' Memorandum of Law in Support of Proposed Findings of Fact and Conclusions of Law at 2-3 **with** Sellers' Brief at 12-15. Sellers' continued reliance upon their pre-decree memorandum of law was misplaced, because Buyer won the trial, based on specific findings of fact and rulings by the court of equity. When a finder of fact reaches a decision, that is an important event, especially where, as here, he ruled a provision of the contract was ambiguous. Because Sellers' brief is a reproduction of the argument they made **prior to** the issuance of the decree, their argument contains no reference to or argument about the court's finding of ambiguity.

matter of law, ***ambiguous writings are interpreted by the finder of fact.***" ***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 469 (Pa. 2006) (emphasis added). When ambiguity is found, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." ***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 437 (Pa. 2004). Thus, when a contract is ambiguous, the issue shifts from a pure question of law to a mixed question of fact and law, with issues of fact predominating. ***See id.*** We may only reverse a finding of contractual ambiguity if the finding is unsupported by competent evidence of the record or it is premised upon an error of law. ***See, e.g.***, ***Jones v. McGreevy***, 270 A.3d 1, 12 (Pa. Super. 2022).

Sellers do not contend (much less prove) that the equity court's finding of ambiguity was unsupported by competent evidence or based upon an error of law. Sellers undoubtedly view their own interpretation of "without added costs to Sellers" as superior to the interpretation of the equity court. To grant Sellers appellate relief, we would have to adopt their unsubstantiated presumption that the clause is clear and unambiguous. However, we may not replace the court of equity's finding of ambiguity with Sellers' unsubstantiated presumption of unambiguity. ***See Jones***, ***supra***.

The equity court interpreted Paragraph 16 as a complete section and principally replied upon the earlier sentences to hold Sellers in breach of those provisions, which it deemed clear and unambiguous. Sellers would have us

reinterpret the contract in their favor, without first explaining why the equity court's finding of ambiguity was erroneous.  Thus, the equity court's ruling of ambiguity is now final and binding, as is the equity court's ultimate conclusion that Sellers breached the first sentence of Paragraph 16, *i.e.*, that they would deliver the restaurant to Buyer in the condition it existed at the time the parties signed the sales agreement.

Thus, Sellers' first issue affords them no relief.

B. <u>Whether Buyer Breached</u>

In Sellers' second appellate issue, they claim that Buyer breached the sales agreement.  Sellers' argument is seven sentences, and they cite no legal authority.  Their entire argument is:

> Pursuant to the agreement, the final date for settlement expired on June 30, 2018. [Trial Ex. P-2 at 1].  [Buyer] did not ever express a willingness to close on the property and pay [Sellers] the purchase price prior to June 30, 2018.  By refusing to proceed with the sale, [Buyer] is the party that has breached the agreement.  Per the agreement, it was [Buyer's] responsibility to proceed to closing for the sale of the property without a structure on it.  Or [Buyer] could agree to terminate the contract.[2]
>
> > FN 2 – The agreement permits [Buyer] to default on the contract with little penalty. [***Id.*** at 8].
>
> It has refused to do either, and the agreement has now expired. Because [Sellers] did not breach [the sales] agreement, judgment should be entered in their favor.

Sellers' Brief at 16.

In an appellate brief, an "argument . . . shall have . . . such discussion ***and citation of authorities*** as are deemed pertinent."  Pa.R.A.P. 2119(a).

Further, "It is a well settled principle of appellate jurisprudence that undeveloped claims are waived . . . on appeal." ***Commonwealth v. McDermitt***, 66 A.3d 810, 814 (Pa. Super. 2013). When "defects in a brief prevent meaningful review, the issue may be found waived."[4] ***Sephakis v. Pennsylvania State Police Bureau of Recs. & Identification***, 214 A.3d 680, 687 (Pa. Super. 2019).

Because Sellers cite no authority and provide no meaningful appellate argument to support their claim that Buyer breached the agreement, we dismiss their second issue as waived.

C.    <u>Whether Buyer Offered Sufficient Evidence for Specific Performance</u>

Third, Sellers ask, "whether the [equity] court erred in granting specific performance where the order led to an inequitable result and failed to properly assess the value of the property?" Sellers' Brief at 2. Given that the equity court ruled that the amount of insurance proceeds Denithorne Brothers, Inc. received was irrelevant, Sellers argue, "specific performance should not have been awarded." ***Id.*** at 20. They contend, because Buyer did not prove the post-fire value of the property, Buyer is not entitled to specific performance of the sales agreement, as a matter of law.

---

[4] "The applicability of waiver principles presents a question of law, over which our standard of review is *de novo* . . . [and] our scope of review is plenary." ***Temple Est. of Temple v. Providence Care Ctr., LLC***, 233 A.3d 750, 760 (Pa. 2020).

Critically, in Sellers' post-trial motion, they never requested judgment, as a matter of law, based on Buyer's lack of proof of post-fire property value.[5] Instead, they sought a ***modification*** of the specific-performance order based on Buyer's lack of proof.

Sellers framed their issue of post-trial relief as "Whether modification of the memorandum opinion and directed verdict is proper, because evidence at trial established that the value of property is currently $375,000?" Sellers' Brief in Support of Motion for Post-Trial Relief at 4; ***see also*** Sellers' Motion for Post-Trial Relief at 5. They claimed, "while there was testimony that a third party received insurance funds [due to the fire], the amount of that payment was excluded from evidence." Sellers' Motion for Post-Trial Relief at 7. Sellers did not assert that the lack of evidence in Buyer's case-in-chief necessitated the denial of any specific performance whatsoever. Instead, they asked the equity court to rely upon the evidence they offered during their defense. Sellers wrote, "Indeed, the only evidence whatsoever of the value of the property was submitted by [Sellers] – an offer of $375,000 for the property received after the fire . . . ." ***Id.*** They therefore contended that "the property ***must be sold*** for $375,000, as the only evidence at trial establishing its post-fire value indicated that the property was worth $375,000 after the fire." ***Id.*** (emphasis added).

---

[5] We reincorporate our scope and standard of review from Note 4, ***supra***.

In response, the equity court addressed the limited issue that Sellers raised. It explained that Sellers argued, "specific performance ***should be ordered*** for the purchase price of [$375,000] based upon an unsolicited offer from CNJ Holdings, purportedly received by [Sellers] following the fire . . . ." Trial Court Order, 12/23/21, at 1 n.1 (emphasis added). Rejecting Sellers' evidentiary argument, the equity court stated, "***we find*** that this third party offer does not accurately represent the true value of the property, [because] no representative of CNJ Holdings testified at trial and . . . the $375,000 offer also included purchase of the restaurant liquor license." ***Id.*** (emphasis added). Clearly, the court viewed Sellers' post-trial motion as a request to modify the order of specific performance and change the purchase price, not a request to deny specific performance entirely.

We agree with the equity court that Sellers' post-trial motion did not contend that specific performance was inappropriate. Indeed, Sellers did not seek judgment, as a matter of law, on that ground. They only sought a modification of the order. Thus, the Sellers' third appellate issue differs from the one they raised below in their post-trial motion.

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Moreover, the Supreme Court of Pennsylvania has long held, "Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." ***L.B. Foster Co. v. Lane Enters., Inc.,*** 710 A.2d 55, 55 (Pa. 1998).

- 13 -

Because Sellers' motion for post-trial relief did not challenge the grant of specific performance, as a matter of law, based on Buyer's lack of evidence regarding the post-fire value of the property, we dismiss this portion of Sellers' third appellate issue as waived. To the extent Sellers argue that the specific performance, as ordered below, was inequitable, because the court of equity failed to determine the post-fire value of the property, we address that argument in the next section.

D.    Whether Specific Performance Should Be Modified

In their final appellate issue, Sellers alternatively contend the court of equity erred in crafting the specific-performance order by deducting the insurance proceeds, paid to a third party, from the purchase price. Sellers' Brief at 22. They claim that the deduction lacks evidentiary support in the record. According to Sellers, "the only evidence submitted at trial was that the property's post-fire value was $375,000." *Id.* They derive that figure from a post-fire offer that Sellers received from CNJ Holdings. *See* N.T., 6/2/20, at 75. Therefore, they seek a modification of the specific-performance order to direct the sale of the property for $375,000, as opposed to $400,000 minus the insurance proceeds.

When we review an equitable decree, the equity court's "findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings." *Carroll v. Ringgold Education Ass'n*, 680 A.2d 1137, 1140 (Pa. 1996).

"A decree of specific performance involves the exercise of the equity power and discretion of the court." ***Wagner v. Est. of Rummel***, 571 A.2d 1055, 1058 (Pa. Super. 1990). "Such a decree will be granted only if a plaintiff clearly is entitled to such relief, there is no adequate remedy at law, and the [equity] court believes that justice requires such a decree." ***Oliver v. Ball***, 136 A.3d 162, 166 (Pa. Super. 2016).

Here, Buyer sought specific performance based on Sellers' breach of a contract for the sale of land. "Contracts for the sale of land have traditionally been accorded a special place in the law of specific performance. A specific tract of land has long been regarded as unique and impossible of duplication by the use of any amount of money." ***Oliver***, 136 A.3d at 167. If Buyer had sought only transfer of the property at the purchase price of $400,000, it would clearly be entitled to that relief.

Instead, Buyer sought one of three additional remedies from Sellers:

1. sell the property to [Buyer] with the restaurant building on the property in the condition it existed as of the time the agreement of sale was signed;

2. coordinate the remediation of the property with [Buyer]; or

3. in the alternative, after coordinating the remediation of the property with [Buyer,] provide the agreed upon funds to [Buyer] at the time of closing.

Buyer's Proposed Findings of Fact and Legal Memorandum at 16.

The equity court did none of the above, because it did not wish to involve itself with negotiations over the remediation process and/or the transfer of

the "agreed upon funds." *Id.* Instead, the court fashioned its own specific performance and ordered the parties to close on the property, in its current condition, for $400,000, less the amount of insurance proceeds paid to Denithorne Brothers, Inc., excluding the proceeds, if any, paid for the loss of the restaurant's equipment and inventory.

We agree with Sellers that this order lacks evidentiary support. As Sellers contend, the record is devoid of evidence establishing how much money the insurance company paid to Denithorne Brothers, Inc. on its policy. Nor does the record indicate what the insurance covered. Was it to replace the building? To repair the building? Did it cover its contents? Did it include loss of business revenues? Good will? Lost wages? Did the insurance cover all or some combination thereof? We simply do not know. We also do not know whether the policy listed the Sellers, who were the landlords of Denithorne Brothers, Inc., as additional insureds. Lastly, we do not know if the insurance proceeds were itemized.

This gap in the record exists, because the equity court ruled that the amount and details of the insurance policy were irrelevant[6] and, therefore, inadmissible. *See* N.T., 6/6/20, at 55-57. But the court of equity, after excluding the evidence of insurance, then relied upon it to fashion the specific-performance order. Although courts of equity enjoy broad discretion when fashioning remedies, that discretion "in any given case must be exercised in

---

[6] *See* Pa.R.E. 401.

- 16 -

accordance with accepted judicial principles." ***Di Pompeo v. Preston***, 123 A.2d 671, 674 (Pa. 1956). For indeed, "equity follows the law." ***First Fed. Sav. & Loan Ass'n of Lancaster v. Swift***, 321 A.2d 895, 898 (Pa. 1974).

It is a basic principle of the law that a "court may not consider evidence outside of the record in making its determination." ***Ney v. Ney***, 917 A.2d 863, 866 (Pa. Super. 2007). ***See also Commonwealth v. Allshouse***, 969 A.2d 1236, 1241 (Pa. Super. 2009) ("Reliance on documents not admitted into evidence is error."). "Nor may this court uphold a trial court's order on the basis of off-the-record facts." ***Ney***, 917 A.2d at 866.

Here, the court of equity committed an error of law by relying upon evidence that it explicitly excluded as irrelevant to fashion its order of specific performance. Once the court ruled that the amount of insurance proceeds was irrelevant, that evidence became incompetent, as a matter of law. ***See Ney***, ***supra***. Therefore, the equity court could not consider the insurance proceeds when fashioning its order of specific performance. Because the order of specific performance "lack[s] evidentiary support on the record," we cannot affirm it. ***Carroll***, 680 A.2d at 1140.

Furthermore, in order to fashion a truly equitable remedy, the court of equity needed to know how much money it was ordering Sellers to deduct from the purchase price. Potentially, the deduction was reasonable in light of the loss that the property suffered. Buyer may need to expend a great deal of money to replace the restaurant. Yet, it is equally possible that the insurance proceeds may vastly exceed the $400,000 purchase price. Thus,

the specific-performance order may force Sellers to go to the closing on their property and pay Buyer a substantial amount of money. Those funds might exceed the cost of replacing the restaurant. Under the current order of specific performance, Buyer could acquire the property ***and*** enough money to build a ***brand-new*** restaurant, something for which it did not contract, giving Buyer a windfall. Thus, the remedy fashioned by the equity court may have been patently inequitable or created an undue hardship for Sellers.

The Supreme Court of Pennsylvania has long held, "Inequity or hardship may be a ***valid defense*** in an action for specific performance, and such decree refused if in the exercise of a sound discretion it is determined that, under the facts, specific performance would be contrary to equity and justice." ***Payne v. Clark***, 187 A.2d 769, 771 (Pa. 1963) (emphasis added). Still, there is no "valid defense if the hardship is due to the defendant's own acts or to events clearly foreseeable. Moreover, mere inadequacy of price, unless grossly disproportionate, will not defeat specific performance." ***Id.***

By excluding the amount of insurance proceeds from the record, the equity court prevented the parties from putting all of their cards on the table and, thereby, impeded itself from fashioning an order of specific performance that encompassed the totality of the circumstances. As we have said, "The Chancelor had a duty to examine whether hardship or injustice would result to the [sellers] if the [buyer's] request for specific performance were granted." ***Wagner***, 571 A.2d at 1059. In this instance, because the court of equity had no way of knowing the degree of hardship (if any) that its specific performance

- 18 -

imposed upon Sellers, the remedy it fashioned was manifestly unreasonable. It may not stand.

However, Sellers requested appellate remedy is also not possible. They ask this Court to modify the specific-performance order to direct Buyer to pay them a purchase price of $375,000 – the amount of the post-fire offer for the property that Sellers received from CNJ Holdings. Such a modification is untenable on the current record.

As Buyer correctly contends, the court of equity rejected that figure as incredible. **See** Trial Court Order, 12/23/21, at 1 n.1. The court logically explained its rejection of Sellers' evidence regarding the post-fire value of the property, because the $375,000 did not itemize the cost of the liquor license and no one from CNJ Holdings testified at trial. As such, the equity court did not capriciously disbelieve Sellers' evidence offered in their defense. **Carroll**, 680 A.2d at 1140.

This Court may not modify the award of specific performance based on evidence that the equity court explicitly and rationally rejected as not credible. If we did, we would essentially repeat the error that the court of equity made by relying upon the excluded amount of insurance proceeds to fashion its order of specific performance.

Because the record is devoid of any competent evidence regarding the post-fire value of the property, the only equitable result is a new trial on the amount of the purchase price that Buyer owes Sellers. This will allow the

equity court another opportunity to modify the order of specific performance based on competent evidence.

We previously ordered such relief when an equity court improperly fashioned a specific-performance order in *Wagner*, *supra*. There, an owner of land had agreed to lease 16 acres of property to various tenants to farm and sell Christmas trees. The agreement also provided that, upon owner's death, tenants could purchase the 16 acres for $550. Many years later, when owner died, tenants sought specific performance of the contract from owner's estate. The estate attempted to defend on the ground that the sales contract was unconscionable. However, the equity court deemed that defense to be waived, because the estate had not raised it in their answer and new matter. The court compelled the estate to transfer the property to tenants for $550.

On appeal by the estate, we found error and said that a "court of equity should not order specific performance where it appears that hardship or injustice will result to either of the parties." *Wagner*, 571 A.2d at 1058. This Court vacated the order of specific performance, because the court of equity failed to consider the potential injustice and hardship that the specific performance might impose on the estate. We said, "it is apparent that we must vacate the order of the [equity] court and remand this case to that court for further consideration . . . In fairness to the parties, the court will be required to accept further testimony . . . ." *Wagner*, 571 A.2d at 1060.

As in *Wagner*, we vacate the order of specific performance and remand for further proceedings. In fairness to the parties, we direct the equity court

to accept further testimony and evidence on the post-fire value of the property from both parties. This will allow the court of equity to measure the extent of loss that Sellers agreed to incur, and ensure that its order of specific performance does not cause them inequity or undue hardship. ***See Payne***, ***supra***. It will also ensure that ***neither*** party receives an unintended windfall from the fire.

Judgment vacated. Order denying motion for post-trial relief partially affirmed and partially reversed. Case remanded for a new trial in accordance with this Opinion.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/15/2024