2025 PA Super 184

| | | |
|---|---|---|
| NAJAEA JONES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FOODS ON FIRST III, INC., D/B/A | : | |
| FOODS ON FIRST, FOODS ON FIRST | : | |
| VI, INC., D/B/A FOODS ON FIRST, | : | No. 177 EDA 2024 |
| MANUEL SALAZAR, AND ALDO | : | |
| SALAZAR | : | |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered June 6, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210700825

BEFORE:  BOWES, J., STABILE, J., and KUNSELMAN, J.

OPINION BY BOWES, J.:                    **FILED AUGUST 26, 2025**

Foods on First III, Inc., d/b/a Foods on First; Foods on First VI, Inc., d/b/a Foods on First; Manuel Salazar; and Aldo Salazar (collectively "Defendants") appeal from the judgment finding in favor of Najaea Jones ("Plaintiff") with respect to her employment discrimination claims.  We affirm.

We glean the following from the certified record.  On April 29, 2017, Plaintiff, who is Black, began working at the restaurant operated by Defendants in Philadelphia called Foods on First.  Her duties primarily consisted of answering telephones and preparing pick-up food orders.  Plaintiff was hired by Aldo Salazar,[1] and managed both by him and his brother, Manuel Salazar.  Aldo and Manuel Salazar owned the business together.  Plaintiff was

---

[1] Aldo Salazar is sometimes referred to in the record as "Elder Salazar."

paid hourly in cash. Her hours fluctuated based on the needs of the restaurant, but were later found by the court to average approximately forty-one and one-half hours per week.

Plaintiff contended that she was subject to multiple instances of sexual harassment during her employment. Specifically, she asserted that she was referred to by her supervisors as a "counter girl," which she thought of as a sexist term. *See*, *e.g.*, N.T. Trial, 4/11/23, at 128. She also stated that Aldo Salazar remarked "the bigger the better" to her in an allusion to penis size and asked Plaintiff to look at female customers while he commented on the dimensions of their buttocks. With respect to Manuel Salazar, Plaintiff claimed that he engaged in the following behaviors: propositioning Plaintiff to move into an apartment above the restaurant so that he could spend time with her; telling her that he would buy clothes for her to look sexier for him; and asking her out to dinner on at least three occasions. Plaintiff reported that another employee at the restaurant named Oscar would frequently discuss sex with her and touch her by grabbing her hand. She reported one such incident to Manuel Salazar, who jokingly told Oscar to stop.[2]

Plaintiff also averred that she suffered race-based discrimination during her employment. She claimed to have overheard Manuel Salazar say that he did not want Black workers because they were lazy and unreliable, despite

---

[2] Additionally, a cook employee referred to the size of female customers' throats in a sexual innuendo and at one point requested from Plaintiff to lick icing from her fingers. *See* N.T. Trial, 4/11/23, at 148, 154-55.

multiple employees of the restaurant being Black. He further lamented aloud that he could never add a buffet to the restaurant because the Black people would hog all the food. Aldo Salazar commented that Latinos were much harder working than blacks and stated that the mice within the restaurant might like "[B]lack meat." *See* N.T. Trial, 4/11/23, at 149. Both Salazar brothers made remarks about Plaintiff's afro hair style. They further would often agree with racially-charged comments made by employees of the restaurant in Plaintiff's presence.

Plaintiff contended that on July 26, 2017, approximately two months after she began working for Defendants, Manuel Salazar asked her to clean a large ten-foot wall. Plaintiff requested assistance with performing this task, and Manuel Salazar responded to another employee that Plaintiff was "about to be out of here." *Id*. at 164. When Plaintiff continued to demand assistance, he told her to go home without giving her a return date, which she interpreted as a termination of her employment. Two days later, on her usual payday, Plaintiff went to the restaurant with her mother and brother to collect her final paycheck. Plaintiff's mother later sent a facsimile to the business expressing her anger at how Plaintiff was treated, and which Defendants believed was an expression of Plaintiff's determination to quit.

Roughly two months later, Plaintiff obtained a job at Five Below, which she left after eight weeks, alleging poor treatment from her supervisor and coworkers. She fell into a depression and did not obtain employment again

until July 2019. Plaintiff treated with a therapist for five or six months during the period to address her depression.

Based on her experience at Foods on First, Plaintiff submitted a complaint to the Pennsylvania Human Relations Commission ("PHRC") on September 25, 2017, alleging both sexual and racial discrimination. She did not file a parallel claim to the Philadelphia Commission on Human Relations ("Philadelphia Commission"). The PHRC issued Plaintiff a right-to-sue letter on November 8, 2018. Therein, it indicated that because a year had elapsed since the filing of the complaint, Plaintiff now had the right to sue in state court. Notably, it stated that the PHRC "is continuing to process your case. . . . If we are not notified otherwise, we will assume that you want the [PHRC] to continue handling your case." *See* Plaintiff's Trial Exhibit 32.[3]

Plaintiff initiated this action by filing a complaint against Defendants on July 13, 2021, which as amended raised the following six counts pursuant to the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"): (1) *quid pro quo* sexual harassment; (2) sexual harassment/hostile work environment; (3) sex discrimination; (4) retaliation; (5) race harassment/hostile work environment; and (6) race discrimination. The count for race discrimination was also filed pursuant to 42 U.S.C. § 1981.

---

[3] A copy of this letter was not included in the certified record, despite being admitted as an exhibit at trial. However, the trial court adopted as a factual finding this language in the letter. Defendants have not argued that the court's representation of the exhibit's language was inaccurate.

As a result of her filing suit, the PHRC sent a notice to Plaintiff indicating that it was closing its investigation.

Prior to trial, Defendants moved for summary judgment. They contended, *inter alia*, that: (1) Plaintiff failed to exhaust her remedies with respect to the claims stemming from violations of the PFPO by not submitting a complaint to the Philadelphia Commission, (2) the PFPO and PHRA claims in the complaint were barred by the statute of limitations based upon the date Plaintiff received her right-to-sue letter from the PHRC, and (3) she did not establish a *prima facie* case concerning her federal § 1981 race discrimination claim arising from the allegations included within the pleadings and discovery.

Approximately one month later, without having disposed of the motion for summary judgment, the court conducted a two-day non-jury trial beginning on April 11, 2023. On the first day, Plaintiff, her mother, and another witness testified in accordance with the above. Aldo and Manuel Salazar were also called by Plaintiff and questioned as if on cross-examination. Of note, Plaintiff introduced into evidence a journal she maintained recording the hours worked and pay received during her time at Foods on First. Plaintiff attested that she kept this journal while she was working since the restaurant did not track her hours and otherwise paid her in cash. The trial court admitted the exhibit over Defendants' hearsay objection. Counsel for Defendants devoted significant time on cross-examination to questioning

Plaintiff about various inaccuracies in her calculations and undated information within the journal.[4]

Before beginning testimony on the second day of trial, upon agreement of the parties, the court entered an order denying Defendants' motion for summary judgment and deferring the issues raised therein to be addressed after trial. The order noted that "[a]ll issues are preserved and . . . reserved for via [*sic*] the nonjury trial now in progress." Order, 4/12/23. Aldo and Manuel Salazar testified on behalf of Defendants on the second and final day of trial. They generally denied the allegations made by Plaintiff with respect to comments and harassment made in the workplace and contended that Plaintiff was a part-time independent contractor, not an employee. Additionally, they disagreed with the notion that Plaintiff was terminated, maintaining instead that she quit after she was asked to go home for refusing to perform her duties. The Salazars also iterated that Plaintiff had performance issues, including refusal to wear her uniform or a hair net when required. We note that Defendants did not move for a directed verdict or a compulsory non-suit at any point during the trial.

In the ensuing weeks, Plaintiff and Defendants submitted proposed findings of fact and conclusions of law to the trial court. Defendants re-asserted the challenges set forth in their motion for summary judgment,

---

[4] For example, Plaintiff would indicate that she worked from 8:00 a.m. to 5:00 p.m. on a given day but write "10 Hours" next to it. **See** Plaintiff's Exhibit 2, at unnumbered 1.

including the exhaustion of administrative remedies for the PFPO claims, the timeliness of the complaint, and the adequacy of the evidence supporting Plaintiff's § 1981 claim of race discrimination. Defendants otherwise averred that the evidence did not demonstrate Plaintiff was fired or that she proved damages.

Within Plaintiff's proposed findings of fact and conclusions of law, approximately 115 pages in length, she relied heavily upon the information contained in her journal to calculate the number of hours she worked during her tenure with Foods on First. She also addressed the legal claims raised in Defendants' pre-trial motion for summary judgment and the sufficiency of the evidence supporting all counts. With a one-page order entered on November 29, 2023, the trial court adopted wholesale the proposed findings from Plaintiff and ordered judgment in her favor in the following amounts: back wages of $31,096, prejudgment interest of $2,177, compensatory damages of $50,000, and attorneys' fees and costs. The court's judgment order, which utilized the proposed order attached to Plaintiff's proposed findings, did not tie its verdict in Plaintiff's favor to particular causes of action, nor did it allocate the damages to specific counts or claims.

Defendants filed a motion for post-trial relief, raising three issues, namely that the court: (1) erred in relying on the hearsay arising from Plaintiff's journal entries; (2) made "determinations that are incorrect as a matter of law" and did not expressly consider the legal issues raised in their motion for summary judgment; and (3) entered an order insufficient to

resolve the legal question presented by the facts of the case. *See* Defendants' Motion for Post-Trial Relief, 12/14/23, at unnumbered 2-3. The motion did not present any argument that the court's verdict was against the weight of the evidence. Defendants appealed while the post-trial motion was pending, and the court thereafter denied the motion in a brief order without explanation as to its ruling.[5] Defendants were not required to submit a Pa.R.A.P. 1925(b) statement, and the record does not reflect that one was filed.

The trial court initially authored a two-sentence memorandum opinion stating that the reasons for its decision could be found in the November 29, 2023 order adopting Plaintiff's proposed findings of fact and conclusions of law. This Court remanded the matter, noting that some issues presented on appeal questioned the trial court's discretion, and directed the court to provide written explanation for its rationale as to the issues presented in Defendants' motion for post-trial relief. The trial court submitted an additional memorandum opinion on May 27, 2025, addressing primarily its consideration of the hearsay challenge to Plaintiff's journal and Defendants' claims that the

_____

[5] Following a rule to show cause issued by this Court, the trial court entered judgment on the verdict on June 6, 2024. We accordingly discharged the rule, and deemed the appeal to have been taken from the judgment. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

verdict was against the weight of the evidence, as the issues were framed in the brief.[6]  This matter is now ripe for review.

Defendants raise the following issues:

1.   Did the trial court commit reversible error by failing to rule on the legal questions raised in Defendants' motion for summary judgment, and then again in their proposed findings of fact and conclusions, and a third time in their motion for [post-trial relief]?

2.   Did the trial court abuse its discretion in admitting and relying upon hearsay evidence that was demonstrated at trial not to be credible, and allowing Plaintiff to select preferred numbers from the self-contradicting document for [her] conclusions of law?

3.   Did the trial court abuse its discretion by ruling for Plaintiffs [*sic*] while ignoring uncontested evidence at trial that undercut each of Plaintiff's claims, such as the admission that purported damages were the result of a subsequent employer, or the admission that she quit rather than being fired?

4.   Did the trial court abuse its discretion by making an arbitrary determination, and failing to provide any justification, support, or reason to view its decision as competent and well-considered?

Defendants' definitive brief at 3 (some capitalization altered).[7]

_____

[6] The parties did not seek leave to respond to the supplemental memorandum opinion.

[7] Due to Defendants filing an election to defer designation of the reproduced record on appeal, this Court entered an order on July 16, 2024, directing the parties to submit definitive versions of their initial appellate briefs upon filing of the reproduced record, in accordance with Pa.R.A.P. 2185(c).  The parties so complied.

### A. **Defendants' Legal Questions - Motion for Summary Judgment**

Defendants first assert that the trial court erred in neglecting to expressly address three distinct issues that they initially raised in their motion for summary judgment prior to trial. *Id*. at 11-18. As noted, the motion was denied at the start of the second day of trial, reserving the right for the parties to address it after trial. The court later implicitly resolved these claims through its adoption of the proposed findings of fact and conclusions of law filed by Plaintiff and later the denial of Defendants' motion for post-trial relief. We address each in turn.

#### 1. PFPO Exhaustion of Remedies

The first legal question Defendants discuss is that Plaintiff failed to abide by the remedy exhaustion requirements of the PFPO. *Id*. at 11-12. The Pennsylvania Supreme Court has stated that "[w]ith regard to questions concerning the exhaustion of administrative remedies, we consider whether the lower court abused its discretion or committed an error of law. As to any question of law, our review is *de novo* and plenary." **Glenn O Hawbaker, Inc. v. Department of Transportation**, 304 A.3d 1067, 1081 n.15 (Pa. 2023) (cleaned up). Additionally, "[i]t is fundamental that prior to resorting to judicial remedies, litigants must exhaust all the adequate and available administrative remedies which the legislature has provided." *Id*. (citations omitted).

- 10 -

The PFPO is an ordinance decreed by the City of Philadelphia. "An ordinance, like a statute, must be construed, if possible to give effect to all of its provisions." *Hand v. Fuller*, 294 A.3d 468, 473 (Pa.Super. 2023) (citation omitted). The PFPO was enacted

> to assure that all persons regardless of race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), reproductive health autonomy, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, source of income, familial status, genetic information and domestic or sexual violence victim status enjoy the full benefits of citizenship and are afforded equal opportunities for employment, housing and use of public accommodation facilities[.]

Phila. Code § 9-1101(1)(3). It creates a private right of action, in pertinent part, as follows:

> If a complainant invokes the procedures set forth in this Chapter, that person's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the [Philadelphia] Commission, the [Philadelphia] Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the [Philadelphia] Commission must so notify the complainant. On receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter.

*Id*. at § 9-1122(1).

Relevant to Defendants' claim, the ordinance further provides that with respect to the filing process, "[a]ny person claiming to be aggrieved by an unlawful employment . . . practice may make, sign and file with the [Philadelphia] Commission a verified complaint in writing which shall state the name and address of the person or persons alleged to have committed the unlawful practice and the particulars thereof." *Id*. at § 9-1112(1).

Additionally, "[t]he [Philadelphia] Commission shall not accept a complaint from any person who has filed a complaint with the [PHRC] with respect to the same grievance." *Id*. at § 9-1112(4).

With this background in mind, we turn to Defendants' specific contention on appeal. They rely upon non-binding federal cases interpreting the PFPO, arguing thusly:

> The first failing of Plaintiff's claim is that [she] never availed [herself] of the provisions of the local PFPO by filing a complaint with the city agency (the [ Philadelphia Commission]). [She] only filed with the state-level [PHRC]. A recent ruling from the Eastern District of Pennsylvania speaks to this exact issue, and held that a complaint filed with the PHRC alleging violation of the PHRA is insufficient to meet the separate requirements of the PFPO. *Lee v. Bay, LLC*, No. 2:21-CV-05088-JDW (Eastern District 2023) ("It is not enough to file a complaint with PHRC because the PFPO has no provision to permit dual-filing with another agency. In fact, the PFPO bars the [Philadelphia Commission] from accepting a complaint from anyone who has filed a complaint with the PHRC.") This comports with another recent Eastern District decision that the PFPO's language is unambiguous and has its own distinct administrative exhaustion requirement. *Smith v. RB Distribution, Inc.*, 498 F.Supp. 3d 645 (E.D. Pa. 2020).

Defendants' definitive brief at 11. Defendants therefore contend that all six of Plaintiff's claims arising from a violation of the PFPO fail as a matter of law.[8]

Our independent research has revealed no binding Pennsylvania authority on the question of whether the law prohibits filing PFPO claims in

_____

[8] The trial court did not address this particular claim beyond adopting the conclusions of law proposed by Plaintiff after trial. Therein, Plaintiff cited a number of cases from the Eastern District of Pennsylvania that are in contradiction to *Lee*. *See* Plaintiff's Proposed Conclusions of Law, 7/1/23, at ¶¶ 7, 9.

state court if a complaint was not first filed with the Philadelphia Commission, but instead was only submitted to the PHRC. The federal district court sitting in Philadelphia appears to be split on this issue. In **Lee**, the court offered a relatively brief analysis to support its contention that cross-filing is required to preserve PFPO actions. The court first interpreted the complaint filing provision at § 9-1112(1) of the PFPO as imposing an administrative exhaustion requirement before filing a lawsuit. **See Lee**, 2023 WL 1971209 at *3. In so doing, it relied upon the ordinance section prohibiting the Philadelphia Commission from accepting a complaint from a person who has filed one for the same alleged illegal conduct with the PHRC. **Id**. Finding none of the language in the PFPO ambiguous, the **Lee** court rejected the plaintiff's contention that the courts should excuse exhaustion under the PFPO when someone files with the PHRC. **Id**. at 4. Despite its holding, the court took care to note that other judges at the same level had reached the opposite conclusion. **Id**.

One such case, decided after **Lee**, is **Higgins v. MetLife Inc.**, 687 F.Supp.3d 644 (E.D. Pa. 2023). There, the district court provided a significantly more detailed and extensive analysis of this question, specifically rejecting the rationale asserted in **Lee**. More particularly, the **Higgins** court noted that "[t]he more established line of cases conclude that the administrative exhaustion requirement under the PFPO can be met by filing with the PHRC and/or [Equal Employment Opportunity Commission]." **Id**. at

651 (citation omitted). In declining to adopt **Lee**'s reasoning, the court opined

thusly:

> [§] 9-1112(1) simply does not feature any such requirement [to exhaust remedies by filing with the Commission,] but merely provides that a person "may make, sign and file" with the Philadelphia Commission a complaint alleging an unlawful practice under the PFPO. Phila. Code § 9-1112(1).
>
> Nor does the plain text of [§] 9-1122(1) require a complainant to invoke the PFPO procedures therein before pursuing PFPO claims in court. That section first provides that, "[i]f a complainant invokes the procedures set forth in [the PFPO], that person's right of action in the courts of the Commonwealth shall not be foreclosed." Phila. Code. § 9-1122(1). Crucially, the text does not provide the inverse, namely that a complainant must invoke the procedures under the PFPO in order to pursue a right of action in court. Similarly, with respect to obtaining notice from the Philadelphia Commission, the section states only that "[o]n receipt of [notice from the Commission] the complainant may bring an action in the Court of Common Pleas of Philadelphia County." Again, the plain text does not state the inverse, namely that a complainant may not bring an action in court without receipt of notice from the Philadelphia Commission. Without those inverse statements in the plain text, [§] 9-1122(1) does not expressly require a complainant to invoke the procedures under the PFPO (by filing a complaint pursuant to [§] 9-1112(1)) or receive notice from the Philadelphia Commission before pursuing such claims in court.
>
> Instead, the text of [§] 9-1122(1) is properly understood as preserving a complainant's right of action in court even if they invoke the procedures under the PFPO by filing a complaint with the Philadelphia Commission—*i.e.*, the section provides that a complainant may still seek judicial recourse after invoking the procedures of the PFPO. Such a reading, which reflects the plain text, moreover accords with judicial interpretation of a parallel provision in the PHRA. **See** 43 P.S. § 962(c)(1). Specifically, the Pennsylvania Supreme Court has treated [§] 962(c) of the PHRA as clarifying that, although a complainant may utilize the procedures of the PHRA, he or she does not thereby foreclose their ability to later pursue relief in the courts. **See Clay** [**v. Advanced**

- 14 -

> ***Computer Applications, Inc.***], 559 A.2d [917,] 920 [(Pa.
> 1989)] (describing how [§] 962(c) provides for "final, rather than
> initial, resort to the courts"). Moreover, in ***Clay***, the Pennsylvania
> Supreme Court did not treat [§] 962(c) as setting forth an
> administrative exhausti[on] requirement in its plain text. Instead,
> the Court determined that the PHRA required administrative
> exhaustion on the basis of structural and policy reasons. ***Id***.
> ("Thus, the statutory scheme would be frustrated if aggrieved
> employees were permitted to circumvent the PHRC by simply filing
> claims in court."). This interpretation of the parallel provision in
> the PHRA accords with this court's reading of the PFPO *supra*.

***Id***. at 652-53 (cleaned up).

The district court in ***Higgins*** then considered the city council's intent with regard to the PFPO in light of its silence on the requirement of administrative exhaustion. It found that "it would be odd for the Philadelphia City Council to provide that the PFPO does not limit the right of complainants to pursue damages under other laws, like the PHRA, while simultaneously forcing complainants to choose between seeking relief under the PFPO and the PHRA." ***Id***. at 654 (citation omitted). The court then concluded:

> the exclusivity provision in PFPO [§] 9-1112(4), which prevents
> the Philadelphia Commission from accepting complaints from
> someone who files a complaint with the PHRC, can be understood
> merely to reflect the procedural exclusivity provisions set forth in
> the PHRA—and not as limiting a complainant's ability to pursue
> relief under the substantive provisions of the PFPO and PHRA.

***Id***. at 655. The court instead determined that § 9-1112(4) of the PFPO "is better understood as divvying up the procedural workload of investigating discrimination claims between the PHRC and the Philadelphia Commission— *i.e.*, a pragmatic measure to prevent dual and redundant proceedings between the two agencies." ***Id***. (citation omitted).

Upon review, we conclude that the trial court here did not err in rejecting Defendants' argument that Plaintiff failed to exhaust her administrative remedies as to her PFPO claims. Although not binding on this Court, we find the thorough and well-reasoned analysis provided by the district court in **Higgins** persuasive, and therefore hold that the PFPO does not require a complainant to file a complaint with the Philadelphia Commission prior to filing a suit in state court if a submission relating to the same conduct has been made with the PHRC. Unlike the court in **Lee**, we do not interpret § 9-1112(1) of the PFPO as imposing a requirement that a complaint must be sent to the Philadelphia Commission before filing a civil complaint, but rather as setting forth the procedures for initiating a complaint with the Philadelphia Commission if that particular remedy is sought. Since Plaintiff here followed the proper channels pursuant to the PHRA, and her filing there related to the same conduct included in her PFPO counts, she was not required to submit a redundant filing to the Commission. No relief is due.

## 2. Statute of Limitations – PHRA and PFPO Claims

The second legal question Defendants assert the trial court erred in rejecting concerned the statute of limitations for Plaintiff's state-related PHRA and PFPO counts. **See** Defendants' definitive brief at 12-16. "Whether the statute of limitations has run on a claim is a question of law for the trial court to determine[.]" **Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 279 (Pa.Super. 2016) (citation omitted). Additionally, such issues "are questions of law for which our standard of review is *de novo* and our scope of

review is plenary." ***Erie Insurance Exchange v. Bristol***, 174 A.3d 578, 585 n.13 (Pa. 2017) (citation omitted).

The relevant statute section of the PHRA, which deals with construction and exclusiveness of remedy, is as follows:

> (c)(1) In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed.  If within one (1) year after the filing of a complaint with the [PHRC], the [PHRC] dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the [PHRC] must so notify the complainant.  On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act.
>
> (2) **An action under this subsection shall be filed within two years after the date of notice from the [PHRC] closing the complaint**.  Any complaint so filed shall be served on the [PHRC] at the time the complaint is filed in court.  The [PHRC] shall notify the complainant of this requirement.

43 P.S. § 962(c) (emphasis added).  The PFPO provides for the same two-year limitation.  ***See*** Phila. Code § 9-1122(2) ("An action under this Section shall be filed within two years after the date of notice from the Commission closing the case.").

Defendants assert that, pursuant to these sections of the PHRA and PFPO, the statute of limitations began running from the time that Plaintiff received the right-to-sue letter in 2018, not the later notice that the agency investigation had closed.  ***See*** Defendants' definitive brief at 13.  Thus, they reason that Plaintiff exceeded the two-year limitations period when she filed the complaint in 2021.  Defendants reject Plaintiff's contention that a right-

to-sue notice and case closure notice are the two separate items referred to in the PHRA. *Id*. Defendants further distinguish the case relied upon by Plaintiff in her proposed conclusions of law, ***Burgh v. Borough Council of Borough of Montrose***, 251 F.3d 465 (3d Cir. 2001), since the facts were different and because its holding was based on federal law and not Pennsylvania law. *Id*. at 14-15. Defendants contend that the public interest is harmed by interpreting the statute in the way Plaintiff suggests, as that would encourage agencies to drag their feet on rendering decisions and concluding investigations, therefore keeping parties open to liability for potentially far longer than two years. *Id*. at 15-16.

Again, the trial court did not provide an independent analysis as to this issue beyond adopting the position set forth by Plaintiff in her proposed findings of fact and conclusions of law. Therein, Plaintiff recounted that in November 2018, the PHRC sent her a letter advising that she now had the ability, but not the duty, to sue in state court since the investigation had been active for one year. *See* Plaintiff's Proposed Conclusion of Law, 6/1/23, at ¶¶ 19-20. Additionally, at no time prior to filing suit did the PHRC indicate that it had "closed" the complaint. *Id*. at ¶ 22. Therefore, Plaintiff asserts, and the court implicitly agreed, that the statute had never begun to run because Plaintiff filed her state action before the PHRC finalized the matter.

In her brief to this Court, Plaintiff expounds on this position. She again cites ***Burgh*** for the proposition that "[i]mportantly, and unlike under Title VII, notice of the right to sue is not required in order to bring the PHRA action.

Instead, after one year has elapsed, a complainant may bring a court action regardless of whether or not he has received a letter from the PHRC." *See* Plaintiff's definitive brief at 36. She notes that it was not until after she filed the civil complaint in state court that she received a "case closure notification" from the PHRC, and that was the point the limitations period began running. *Id*. at 38. Plaintiff opines that this is consistent with the language of 43 P.S. § 962(c)(2), and the nearly identically-worded PFPO.

Based on our review, we agree with the trial court that Plaintiff's claims here were timely filed. The clear language of § 962(c)(2) dictates that she had "two years after the date of notice from the [PHRC] **closing the complaint**" in which to bring the suit. She did not receive that notice until after filing the underlying civil complaint, and therefore she was not barred from raising her PHRA claims. The same applies to her counts arising from violations of the PFPO, as that ordinance contains nearly identical language as that within the PHRA.

Additionally, Defendants have not persuaded us through their public policy arguments that our interpretation would have any detrimental effect on how the agencies conduct their investigations. Nothing in our decision prohibits or dissuades either the PHRC or the Philadelphia Commission from sending notices closing out their cases or investigations after one year and triggering the beginning of the statute of limitations for complainants. In short, the arguments set forth by Defendants do not render our interpretation of either the PHRA or the PFPO unreasonable, and therefore we abide by the

clear language expressed in those provisions. *See*, *e.g.*, *Commonwealth v. Kolesar*, 324 A.3d 578, 580 (Pa.Super. 2024) ("We do not look beyond the plain language of an unambiguous statute, unless the plain meaning would lead to a result that is absurd, impossible of execution, or unreasonable." (cleaned up)); *Trout v. Strube*, 97 A.3d 387, 390 (Pa.Super. 2014) ("If the terms of a statute are clear and free of all ambiguity, we will not disregard the letter of the law in favor of pursuing its apparent spirit." (citation omitted)).

### 3. *Prima Facie* Case - § 1981 Claim

The final legal question initially raised in Defendants' motion for summary judgment and challenged on appeal concerns whether Plaintiff adequately established a *prima facie* case with respect to her § 1981 race discrimination claim. *See* Defendants' definitive brief at 16-18. The thrust of Defendants' contention is that Plaintiff failed to establish that race was the "but-for" cause of her termination throughout the pleadings in the time leading up to trial. *Id*. at 16. Defendants identify the allegations made in Plaintiff's complaint, particularly as to disparate treatment between Plaintiff and other employees of Foods on First, and conclude that they fail to "create a 'causal nexus' between her race and her termination." *Id*. at 17. They specifically argue that the court should have granted relief on their summary judgment motion based on these inadequacies, and that the § 1981 claim should not have been considered at trial. *Id*. at 18.

This claim is moot because the case has gone through trial and the court considered evidence as to the race discrimination count. We have held that

"a trial court's denial of a fact-dependent pre[-]trial [motion for summary judgment] is not reviewable when the issue was subsequently resolved at trial." *Coryell v. Morris*, 330 A.3d 1270, 1276 (Pa.Super. 2025) (*en banc*). In this vein, *Coryell* affirmed the same holding in *Xtreme Caged Combat v. Zarro*, 247 A.3d 42 (Pa.Super. 2021), wherein this Court stated:

> [W]here, as here, a summary judgment motion is based on the sufficiency of the evidence to prove the plaintiff's claims, once a case goes to trial and evidence is presented at trial, the denial of summary judgment is moot and the sufficiency of the evidence must be analyzed based on the trial record.

*Id*. at 50-51. Defendants' assertion that Plaintiff did not establish a *prima facie* case of her race discrimination claim is necessarily fact-dependent, and the evidence as to the claim was presented at trial. Thus, the issue concerning the trial court's failure to dispose of the motion for summary judgment is moot.[9]

### B. Hearsay

In Defendants' second issue on appeal, they contend that the court erred in admitting unreliable hearsay evidence at trial relating to Plaintiff's hours and wages, namely her contemporaneously-kept handwritten notes in her journal. *See* Defendants' brief at 18-21. It is well settled that "[t]he admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law." *Viall v. Garvin*, 318 A.3d 905, 922 (Pa.Super. 2024) (citation omitted). "An

_____

[9] We discuss Defendants' related sufficiency-of-the-evidence argument concerning the § 1981 count in more detail below.

abuse of discretion . . . requires demonstration that the lower court's decision was a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." *Id*. (citation omitted).

Our rules of evidence "define 'hearsay' as an out of court statement offered in court for the truth of the matter asserted." *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 640 (Pa.Super. 2019) (citation omitted). Hearsay is generally not admissible, subject to several exceptions. *See* Pa.R.E. 802. One exception, which was discussed by the trial court in its supplemental memorandum opinion following remand, is as follows:

> **3) Recorded Recollection of Declarant-Witness.** A memorandum or record made or adopted by a declarant-witness that:
>
> (A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) the declarant-witness testifies accurately reflects his or her knowledge at the time when made.

Pa.R.E. 803.1(3).

With respect to this issue, Defendants note that during the trial, neither Plaintiff nor the trial court specifically identified any hearsay exception applicable to the handwritten notes in question. *See* Defendants' definitive brief at 19. They state that in their view, the closest pertinent one is the business records exception under Pa.R.E. 803(6); however, that does not

apply because the records were not kept as a part of Plaintiff's official duties. *Id*. Defendants further argue that the notes were demonstrably inconsistent and untrustworthy based on mathematical computation errors that Plaintiff could not explain while on the stand. *Id*. at 19-21. They maintain that despite being given the opportunity, she never clarified the discrepancies in the documents. *Id*. at 20. Defendants accuse Plaintiff of then cherry-picking helpful facts from the document, while ignoring others, in ultimately providing the findings of fact that the trial court accepted. *Id*. at 21.

In its supplemental opinion, the trial court determined that the records satisfied the hearsay exception concerning the recorded recollection of a declarant witness, consistent with Pa.R.E. 803.1(3).[10] *See* Trial Court Opinion, 5/7/25, at unnumbered 2. Upon review, we find no abuse of discretion with the court's decision to permit evidence of Plaintiff's hours as recorded within her journal. The document satisfied all elements of Pa.R.E. 803.1(3) in that Plaintiff once knew the shifts she worked but could not recall them as of the time of trial, she had prepared the notes contemporaneously with when she worked, and they reflected her knowledge at the time made. Moreover, the trial court found that it could reconcile the mathematical errors by adopting the start and stop times of each shift logged by Plaintiff, rather than depending upon her faulty addition. This in turn provided a basis for the

_____

[10] The trial court mistakenly cited this exception as Pa.R.E. 803(3). *See* Trial Court Opinion, 5/7/25, at unnumbered 2.

court's ultimate award of damages to Plaintiff.  Since the court did not err in admitting or relying upon this evidence, this issue fails.

### C.  Sufficiency and Weight of the Evidence

In their next issue, Defendants assert that the trial court "abused its discretion" by ruling in Plaintiff's favor while "ignoring uncontested evidence" that undercut Plaintiff's case.  **See** Defendants' definitive brief at 22.  This claim has three subparts.  Defendants first point to evidence from trial to support their contention that Plaintiff was not fired from her job, a requirement for her discrimination claims.  **Id**.  The second argument is that Plaintiff's § 1981 race discrimination claim must fail due to the lack of trial evidence demonstrating a causal nexus between her race and any termination.  **Id**. at 25-30.  Finally, Defendants claim that Plaintiff admitted to intervening causes that would prohibit her entitlement to damages, namely her negative employment stint at Five Below after leaving Foods on First.  **Id**. at 24.

Initially, it is wholly unclear whether Defendants purport to raise sufficiency or weight challenges within this issue.  By iterating that the court "abused its discretion" with its findings, this suggests that Defendants attack the weight of the evidence afforded by the trial court.  **See**, **e.g.**, **Feldman v. CP Acquisitions 25, L.P.**, 325 A.3d 691, 711 (Pa.Super. 2024) ("Appellate review of a weight claim is a review of the trial court's exercise of discretion[.]" (cleaned up)).  In the section of their brief articulating the standard and scope of review, Defendants cite no legal authority, rather baldly asserting that

"[t]he uncontested facts of this matter create a narrative that also makes the trial judge's determination clearly unreasonable," again suggesting a potential weight claim. *See*, *e.g.*, *Commonwealth v. Williamson*, 330 A.3d 407, 419 (Pa.Super. 2025) (noting that a trial court abuses its discretion for purposes of a weight claim where, among other things, it renders a judgment that is "manifestly unreasonable" (citation omitted)). On the other hand, the arguments they set forth concerning the § 1981 count for race discrimination aver that Plaintiff failed to meet her burden of proof, thus going to the sufficiency of the evidence.

Regardless of how these arguments are categorized, we find that they have been waived for purposes of appeal. To the extent Defendants purport to raise weight of the evidence claims, these were not argued as such in their post-trial motion for relief. This is a critical step for preserving these issues for review. *See*, *e.g.*, *Matthew 2535 Properties, LLC v. Denithorne*, 313 A.3d 223, 232 (Pa.Super. 2024) ("Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." (citation omitted)).

Insofar as any of Defendants' arguments could be construed as challenges to the sufficiency of the evidence, they fare no better. The attacks asserted by Defendants in their post-trial motion constituted a request for judgment notwithstanding the verdict ("JNOV"). *See*, *e.g.*, *Garced v. United*

*Cerebral Palsy of Philadelphia and Vicinity*, 307 A.3d 103, 113 (Pa.Super. 2023) (stating that "[w]hen reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict" (citation omitted)). Yet, "[t]o preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury **or move for a directed verdict or a compulsory non-suit at trial**." *Mazzie v. Lehigh Valley Hospital-Muhlenberg*, 257 A.3d 80, 87 (Pa.Super. 2021) (emphasis added, citation omitted). *See also Haan v. Wells*, 103 A.3d 60, 68 (Pa.Super. 2014) (finding the parties did not preserve their challenge to the sufficiency of the evidence when they did not move for either a nonsuit or directed verdict in a non-jury trial). As Plaintiff highlights in her brief, Defendants never moved for either compulsory non-suit or directed verdict during trial.

We note that this Court has overlooked waiver in instances where the trial court disposed of a post-trial motion on the merits or declined to find waiver. *See*, *e.g.*, *Bank of America, N.A. v. Scott*, 271 A.3d 897 (Pa.Super. 2022); *Karden Construction Services, Inc. v. D'Amico*, 219 A.3d 619 (Pa.Super. 2019). Those cases, however, and the authority they rely upon, do not stand for the proposition that we are **precluded** from finding waiver in similar circumstances. Moreover, the trial court did not explicitly address the

sufficiency arguments to the extent they were developed in the post-trial motion.

In an abundance of caution, even if Defendants' sufficiency claims were not waived, they nevertheless would not warrant relief. As our High Court stated:

> When reviewing a sufficiency of the evidence claim in a civil case . . ., an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, must determine whether the evidence was sufficient to enable the factfinder to find that all the elements of the causes of action were established by a preponderance of the evidence. Whether a claim was established under a preponderance of the evidence standard is tantamount to a more likely than not inquiry.

*Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 34-35 (Pa. 2011) (cleaned up). The specific notions that Defendants attack in this issue are whether: (1) Plaintiff was fired from her position, (2) she proved that race was the but-for cause of her termination as to her § 1981 claim,[11] and (3) her subsequent job at Five Below was an intervening cause for the damages she was awarded.

Through its adoption of Plaintiff's proposed findings, it is clear that the trial court believed Plaintiff's testimony over that of Defendants', to the extent

---

[11] *See*, *e.g.*, *Comcast Corporation v. National Association of African American-Owned Media*, 589 U.S. 327, 333 (2020) (stating that "a plaintiff bears the burden of showing that race was a but-for cause of its injury" in proving a § 1981 race discrimination claim). Defendants do not dispute on appeal that Plaintiff was a member of a protected class and that she was qualified to perform her job duties. *See* Defendants' definitive brief at 16.

they contradicted. *See* Trial Court Opinion, 5/27/25, at unnumbered 3 (reinforcing that any inconsistencies in testimony were addressed by the court's adoption of Plaintiff's proposed findings of fact). At trial, Plaintiff testified that she understood the directive for her to go home by her supervisor with no set return date to be a termination, and she believed that her firing was due to both her sex and race. *See* N.T. Trial, 4/11/23, at 202-203 (explaining the reasons for her firing: "Because I was a [B]lack woman willing to speak up, which [Defendants'] other employees didn't do. I was speaking up, and they didn't like that.").[12] The testimony further bore out that not only did the Salazar brothers personally subject Plaintiff to harassing conditions, they permitted other employees to do so without sincere correction. Plaintiff asserted that she was propositioned sexually by Manuel Salazar and that the owners of the restaurant frequently made disparaging comments about the work ethic and habits of Black persons, demonstrating their general hostile view towards them.

The court was within its right to reject as incredible Defendants' position that Plaintiff's separation was a result of poor work performance. *See Doe v.*

_____

[12] Defendants disingenuously maintain that Plaintiff conceded on the stand that her termination was based solely on her sex. *See* Defendants' brief at 29 (citing N.T. Trial, 4/11/23, at 202). As shown above, however, while she did at one point indicate that she was fired for being a female, in the very next line of questioning from Defendants' counsel, Plaintiff clarified her opinion that she was fired because of both **her race** and her sex. *See* N.T., 4/11/23, at 202.

***Wyoming Valley Health Care System, Inc.***, 987 A.2d 758, 764 (Pa.Super. 2008) ("Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed." (citation omitted)). ***See also***, Plaintiff's Proposed Findings of Fact, 6/1/23, at ¶¶ 164, 179, 214 (finding the testimony of Manuel and Aldo Salazar not credible with respect to the circumstances surrounding Plaintiff's last day of employment and their denial of engaging in sexual and race-based harassment). In addition, the evidence introduced at trial was sufficient to establish that Plaintiff's race was a but-for factor in their decision to let her go based on the antagonistic workplace culture maintained against Black workers and patrons of the restaurant.[13]

As far as intervening causes for damages are concerned, the trial court considered the fact that Plaintiff sought treatment for depression following her termination in calculating the damages to which Plaintiff was entitled. ***See*** Trial Court Opinion, 5/27/25, at unnumbered 5. It specifically "did not find the employment [at Five Below] to be an intervening cause of the Plaintiff's damages," even though Plaintiff testified to having a negative term of

_____

[13] Even if we were to agree with Defendants that Plaintiff failed to establish her § 1981 claim, any error in finding in Plaintiff's favor on that count would be harmless. As mentioned, that claim was lumped together at count six with race discrimination allegations pursuant to the PFPO and PHRA. Defendants have not pointed to any unique damages awarded to Plaintiff due to her success on the federal claim.

employment there. *Id*. at unnumbered 4-5. It concluded rather that "the experience of working for the [Salazars] caused [Plaintiff's] mental anguish, humiliation, distress[,] and loss of dignity" that required treatment with a therapist for six months. *Id*. at unnumbered 5. The court also properly deducted the period of time Plaintiff worked at Five Below from the award of damages. Therefore, the evidence was sufficient to overcome this challenge set forth by Defendants. This is especially true in light of Defendants' scant argument as to this point, which, although citing the record to establish its factual position, did not identify any legal authority discussing intervening causes, how they affect the award of damages, or the like. It is not the duty of this Court to develop a party's arguments. *See Kalili v. State Farm Fire and Casualty Company*, 330 A.3d 396, 406 (Pa.Super. 2024) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

### D. Imposition of Arbitrary Order

In their remaining issue, Defendants contend that the trial court abused its discretion by issuing an arbitrary order disposing of this matter. *See* Defendants' definitive brief at 30-31. Particularly, they lament that despite the complex and numerous issues presented in this case, the trial court merely adopted Plaintiff's proposed findings of fact and conclusions of law with a single-page order, and then denied Defendants' post-trial motion without explanation. *Id*.

While those facts may be true, they do not warrant relief. As indicated, Plaintiff's proposed findings were extremely thorough and addressed all the issues raised in this appeal, including the legal questions reasserted in Defendants' post-trial motion and the sufficiency of the evidence supporting each count. The fact that the trial court accepted those findings as written did not by itself make its decision arbitrary. **See**, **e.g.**, **Guiser v. Sieber**, 237 A.3d 496, 499 (Pa.Super. 2000) (reiterating the principle that "it is not error for the trial court to adopt a party's proposed findings of fact and/or conclusions of law"). Additionally, Defendants cite no legal authority supporting their contention that they are entitled to either reversal of the judgment or a new trial based on that position. Moreover, to the extent the trial court did not initially address in writing its rationale underlying the claims implicating its discretion, the court dutifully complied with this Court's directive and submitted a supplemental memorandum opinion speaking to these issues.

In sum, we have no cause to disturb the trial court's judgment order entered in favor of Plaintiff in this case.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/26/2025